ATTORNEYS FOR APPELLANT
Ann M. Sutton
Marion County Public Defender Agency
Indianapolis, Indiana

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

In the
Indiana Supreme Court

No. 49S02-0412-CR-509

AARON G. FOWLER,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49G16-0307-CM-123009
The Honorable Danielle Gaughan, Master Commissioner

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0310-CR-930

**June 16, 2005**

**Boehm, Justice.**

Under the recent decision of the Supreme Court of the United States in Crawford v. Washington, 541 U.S. 36 (2004), a prior testimonial statement is admissible against the defendant in a criminal prosecution only if the person who makes the statement is available for cross-examination either before the trial or at the trial. We hold that a witness who takes the stand but refuses to answer questions with no claim of privilege is available until the witness refuses to answer after being ordered to do so.

Not surprisingly, this issue, like the scope of "testimonial statements" addressed in Hammon v. State, ___ N.E.2d ___ (Ind. 2005), arises in the context of a charge of domestic violence. If a witness appears and testifies, the Confrontation Clause as explained in Crawford has no effect. That is what happens in the vast majority of criminal proceedings. Two groups of cases provide the bulk of the exceptions. Victims of domestic abuse, for reasons touched on below, and child victims of sexual abuse, by virtue of their age, are by far the most likely candidates to be unable or unwilling to testify at the trial of the person accused of abusing them. In recognition of the problem presented by the very young victim, our legislature, along with those of many other states, has enacted specific provisions intended to preserve the confrontation rights of the accused but minimize the additional burden that a trial imposes on a child victim. See Pierce v. State, 677 N.E.2d 39, 41 (Ind. 1997) (discussing Indiana Code section 35-37-4-6 (2004)).

Victims of domestic violence, however, are left to the harsh reality of ordinary trial procedures. Not infrequently a victim is asked to incur the additional emotional and sometimes also financial burden of testifying against a spouse or domestic partner in the interest of deterring other potential abusers. We readily sympathize with victims placed in this situation. We nevertheless are obliged to apply the law as it stands. The discretion to institute a criminal proceeding lies in the hands of the prosecutor. Once a crime is charged, the rules of evidence and the constraints of the Constitution come into play. Highly charged settings such as the victim's refusal to testify in this case undoubtedly present difficult choices for defendants and their lawyers. Nevertheless, we conclude the defendant must ask the trial judge to put a recalcitrant witness to the choice of testifying or contempt, or forego a Confrontation Clause challenge to the introduction of the witness's earlier statements.

**Facts and Procedural History**

Shortly before dawn on July 24, 2003, Indianapolis Police Officer Mark Decker and trainee Douglas Lepsky responded to a reported domestic disturbance at the home of defendant Aaron Fowler. Decker knocked on the door and was admitted by Sherry Cushionberry, a friend of Ametrua Roar, Fowler's wife. Decker found Roar sitting on a couch, sobbing, and rocking back and forth. She had blood on her pants and shirt, and a bloody nose. In response to

2

Decker's initial inquiry about Roar's condition, she replied without elaboration "everything was alright." As Decker and Lepsky began to leave the residence, Cushionberry told the officers that Fowler was upstairs.

The police went upstairs where, according to Fowler, they wakened him at gun point yelling "Oh yeah, you like to beat on your girlfriend." Fowler responded that he had not done anything to Roar. Fowler was handcuffed and removed from the house. Decker and Lepsky then "re-interviewed" Roar, who gave the account of the evening's events described below.

Fowler was charged with battery and domestic battery. Two months later the State called Roar as its first witness in a bench trial. After some preliminary questions, the State showed Roar pictures of her taken at the scene and asked her how that happened. Roar responded, "I don't want to testify. I can't do this. . . . I don't want to testify no more!" After a recess the State had no further questions for Roar. The defense then cross-examined Roar as follows:

Q: Miss Roar, you stated that you were there on July 24th in your home, correct?
A: Yes.
Q: Has anybody threatened you to testify today?
A: I don't want to be here. It's too much pressure. I can't do it. I don't want to testify. It's too much pressure and there's too many people talking to me. I don't want to testify no more! I want to go home. I can't do this.
Q: No further questions at this time.

Neither the State nor the defense made any attempt to compel Roar to answer further questions.

Decker then took the stand and testified that in response to the questions "what had happened," "who . . . caused physical damage to [your] face," and "where [did] the blood [come] from,"

[Roar] stated that the argument started at approximately one a.m. in the morning. She wanted her husband to come to bed, to go upstairs. They got into an argument. He wanted to stay downstairs. He said, "I'm not going to sleep if I come up there." At that time he did follow her upstairs. Upstairs they got into another verbal argument so to get away from him she went back downstairs. Then a couple more hours elapsed. She goes upstairs and finds him asleep in her daughter's bedroom and she kicks the bed to wake him up and asks him to come into the bedroom to sleep. At that time he jumps up out of bed and makes a statement to her and then starts choking her and punching her in the face. . . .

3

She stated that he punched her several times in the face and I asked her, "Can you tell me about how many times it was," and she said it was so may times that she lost count.

Over Fowler's hearsay objection, the trial court admitted the testimony under the excited utterance exception.

The trial judge found Fowler guilty of domestic battery, a class A misdemeanor, and imposed a sentence of three hundred sixty-five days. On appeal, the Court of Appeals upheld the trial court's ruling that Roar's statements to Decker were admissible under the excited utterance exception to the hearsay rule. Fowler v. State, 809 N.E.2d 960, 962 (Ind. Ct. App. 2004). The Court of Appeals, following its holding in Hammon v. State, 809 N.E.2d 945 (Ind. Ct. App. 2004), held that there was no Confrontation Clause violation under Crawford v. Washington, 541 U.S. 36 (2004), because the very nature of an excited utterance "places it outside the realm of 'testimonial' statements." Fowler, 809 N.E.2d at 964. We granted transfer. Fowler v. State, 2004 Ind. LEXIS 1030 (Ind. Dec. 9, 2004).

## I. Excited Utterance

Fowler contends that his wife's statements to the police were inadmissible hearsay and that they were the only evidence supporting his conviction. For a statement to be admitted under Indiana Rule of Evidence 803(2), the exception for an excited utterance, three elements must be shown: (1) a startling event, (2) a statement made by a declarant while under the stress of excitement caused by the event, and (3) that the statement relates to the event. Yamobi v. State, 672 N.E.2d 1344, 1346 (Ind. 1996). The ultimate issue is whether the statement is deemed reliable because of its spontaneity and lack of thoughtful reflection and deliberation. Id. at 1347. Determining whether a statement constitutes an excited utterance is essentially a factual determination subject to a clearly erroneous standard of review, sometimes described as the functionally equivalent standard of abuse of discretion. Davenport v. State, 749 N.E.2d 1144, 1148 (Ind. 2001).

Officer Decker testified that he arrived at Roar's residence approximately five minutes after receiving a domestic disturbance dispatch and that he spoke with Roar no more than ten minutes after his arrival. Thus, about fifteen minutes elapsed between the time of Cushion-

4

berry's 9-1-1 call reporting the incident and Roar's statements to Decker. At the time Roar made the statements implicating Fowler, she claimed to be in pain and was still crying, bleeding from the nose, and having trouble catching her breath. The Court of Appeals found it "reasonable to infer from this evidence that a startling event had occurred that resulted in [Roar]'s bloody nose, that [Roar] was still under the stress caused by that event, and that her statement related to the event. . . . The trial court here did not abuse its discretion in concluding that [Roar]'s statements to Officer Decker were excited utterances." Fowler, 809 N.E.2d at 962. We agree that Decker's account of Roar's report to him was properly admitted as an excited utterance insofar as state rules of evidence are concerned.

## II. Confrontation Clause

In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause of the Sixth Amendment to the Federal Constitution prohibits admission in a criminal trial of testimonial statements by a person who is absent from trial, unless the person is unavailable and the defendant had a prior opportunity to cross-examine the person. This constitutional rule prohibits evidence even if it qualifies for a state law hearsay exception. In Hammon v. State, ___ N.E.2d ___ (Ind. 2005), we considered what constitutes a "testimonial" statement and concluded that an excited utterance is not necessarily immune from attack under the Confrontation Clause. For purposes of this case we assume without deciding that Roar's account in the "reinterview" was testimonial. For the reasons explained below we conclude that Decker's testimony reporting Roar's statements was nevertheless properly admitted into evidence.

Crawford reexamined and redefined the scope of the Confrontation Clause, but it did nothing to alter the principles governing declarants who are available for cross-examination at trial. Crawford overruled the portion of Ohio v. Roberts, 448 U.S. 56 (1980), that had authorized the admission of hearsay statements based on findings of particularized guarantees of trustworthiness. Confrontation, not reliability or trustworthiness, is the foundation of the Sixth Amendment right. Crawford, 541 U.S. at 59. Although the Court found the opportunity for cross-examination to be the essential requirement of the Confrontation Clause, it did not hold that all testimonial statements must have been subject to cross-examination at the time they were made.

To the contrary, the Supreme Court explicitly reaffirmed its holding in <u>California v. Green</u>, 399 U.S. 149 (1970):

> Finally, we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.

<u>Crawford</u>, 541 U.S. at 59 n.9. Thus, if the declarant "appears for cross-examination at trial,"—sometimes treated as equivalent to "available"—the opportunity for cross-examination on the witness stand is sufficient for purposes of the Confrontation Clause.

When the Court of Appeals considered this case, Judge Crone concurred in the result on the ground that Roar's appearance at trial satisfied the Confrontation Clause. <u>Fowler</u>, 809 N.E.2d at 965 (Crone, J., concurring). Judge Crone considered the result dictated by this Court's decision in <u>Clark v. State</u>, 808 N.E.2d 1183 (Ind. 2004). In <u>Clark</u>, a witness who testified at trial had been interviewed under oath by the prosecutor before the defendant was arrested. After the witness had testified, the trial court admitted the transcript of the earlier interview. We held "the federal right of confrontation has not been denied when the witness is available for cross-examination." <u>Clark</u>, 808 N.E.2d at 1189 (citing <u>United States v. Valdez-Soto</u>, 31 F.3d 1467, 1470 (9th Cir. 1994)). In a footnote we added: "the very recent decision of the United States Supreme Court in [<u>Crawford</u>], does not affect this case because Watson testified at trial." <u>Id.</u> at 1189 n.2. The defendant in <u>Clark</u> argued that because the witness's prior statement was admitted after the witness had left the stand, the defendant had no opportunity for cross-examination. However, we held that because the defendant gave no reason why he could not have recalled the witness, a violation of the Confrontation Clause was not established. <u>Id.</u> at 1189-90; <u>see also</u> <u>Kielblock v. State</u>, 627 N.E.2d 816, 821 (Ind. Ct. App. 1994) (finding no abuse of discretion in admission of audiotape and transcript of victim interview where victim had testified during State's case in chief and "'was still under subpoena and was subject to being called to testify'") (citation omitted), <u>trans. denied</u>. We adhere to the view that a witness is not unavailable simply because the witness does not take the stand. If the attendance of the witness can be obtained through subpoena or otherwise, that person is available. Thus, tools to compel attendance must be exhausted before a claim of violation of the Confrontation Clause will be entertained. <u>Pavlik v. United States</u>, 951 F.2d 220, 224 (9th Cir. 1991) (any harm to the defendant because of lack of

6

an "effective opportunity" to confront a non-testifying witness was self-inflicted because the defendant made no attempt to subpoena the witness).  As explained below, we think this doctrine is relevant, even though it is not dispositive of this case because Roar was present at the trial and did take the stand.

In Crawford itself, the defendant's wife was never subject to cross-examination either before or at the defendant's trial.  She did not testify because of a Washington state rule that goes further than Indiana's marital privilege and prevents altogether a married person from testifying without the consent of the spouse.  Crawford, 541 U.S. at 40.  Her pretrial statements to police were nevertheless admissible under a Washington state hearsay exception.[1]  The Supreme Court held that her statements were testimonial and their admission violated the Confrontation Clause because the defendant had no opportunity to cross-examine her.  Id. at 68.

The precise issue in this case is whether a witness who is present and takes the stand, but then refuses to testify with no valid claim of privilege, is a witness who "appears for cross-examination" (as that term is used in Crawford) if no effort is made to compel the witness to respond.  The more general unresolved issue under Crawford is what it means to say a witness is "available at trial for cross-examination."  Discussions of this issue have often expressed the issue as whether the witness is physically in the courtroom and takes the stand.  If so, the person is at trial and can be questioned.  But even if a witness takes the stand, inability to obtain answers in cross-examination can arise from the witness's real or professed lack of memory, from incapacity due to age or other limitation, from a claim of privilege, or, as in Roar's case, from a simple refusal to answer.  Pre-Crawford decisions, not always consistently, held the witness to be "available for cross-examination" in some of these circumstances but not in others.

Whether a witness is unavailable for purposes of the Confrontation Clause is a question of law.  See Jennings v. Maynard, 946 F.2d 1502, 1504 (10th Cir. 1991) ("We review an issue of unavailability under the Confrontation Clause de novo.").  The question of availability of a witness has arisen in a variety of related but different contexts.  Although Crawford is a recent and abrupt shift in the breadth of the Confrontation Clause, we have some polestars.  As already

---

[1] The prosecution invoked the Washington Rule 804(b)(3) exception for statements against penal interest because the wife's statements implicated her, as well as her husband, in the crime.  Crawford, 541 U.S. at 40.

noted, Crawford held that a witness who was precluded from testifying by a rule of state law is not available. Crawford also explicitly reaffirmed Green, which dealt with a witness who claimed not to recall the answer.[2] 541 U.S. at 59. The Supreme Court there held that the Confrontation Clause is not violated by admitting a declarant's out of court statement as long as the declarant testifies as a witness and is "subject to full and effective cross-examination." Green, 399 U.S. at 158.

Although some courts and commentators contended that a witness who asserts an inability to recall any significant information is for all practical purposes unavailable for confrontation, this issue was settled in United States v. Owens, 484 U.S. 554, 558 (1988).[3] In Owens, the Supreme Court, citing Justice Harlan's "scholarly concurrence" in Green, held that as long as the declarant testifies the Confrontation Clause has been satisfied even if the declarant is unable to recall the events in question. Id. at 558. In the context of addressing the defendant's concomitant challenge under Evidence Rule 801(d)(1)(C), Owens observed that "[o]rdinarily a witness is regarded as 'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions." Id. at 561. The feigned or real absence of memory is itself a factor for the trier of fact to establish, but does not render the witness unavailable. Rather, as Owens explained, it is a factor for the trier of fact to consider in evaluating the witness's current and earlier versions. Id. at 559. Justice Scalia is the author of both Crawford and Owens. We conclude that a witness who is present and responds willingly to questions is "available for cross-examination" as that term is used in Crawford in discussing the Confrontation Clause, just as Owens observed that such a witness is "subject to cross-examination" under the common understanding of that phrase. We believe no significance attaches to these slightly different verbal formulations.

---

[2] In Green, a juvenile had told the police officer that the accused had furnished marijuana to the juvenile. The juvenile then testified at the accused's preliminary hearing to the same effect. 399 U.S. at 151. At the trial, however, the juvenile said that he was under the influence of LSD at the time and was unable to remember how he had obtained the marijuana. Id. at 152. Both the prior testimony of the juvenile in the preliminary hearing and the police officer's testimony relating what the minor had told him were admitted into evidence. Id. The Court noted that the testimony of the juvenile in the preliminary hearing was under oath and subject to cross-examination at that time. Id. at 151.

[3] See, e.g., 4 Clifford S. Fishman, Jones on Evidence, Civil and Criminal § 25:1 at 292 (7th ed. 2000).

Crawford dealt with a witness who was not physically present at trial, and Green and Owens each dealt with a witness who responded but disclaimed memory. Neither addressed whether a witness who is present but is unwilling or unable to respond at all is available for cross-examination. Some pre-Crawford courts have applied Green and Owens broadly and held that physical presence at trial eliminated Confrontation Clause objections to admission of prior statements by witnesses who supplied no answers for reasons other than lack of memory. For example, in Nichols v. Commonwealth, 369 S.E.2d 218, 220 (Va. Ct. App. 1988), a witness was held in contempt for refusing to answer on cross-examination because of death threats to his family. The court held that the witness's refusal to answer did not defeat the defendant's opportunity for confrontation because the defendant had the opportunity to expose the infirmity.

Other pre-Crawford decisions have found a witness who refuses to answer to be unavailable for purposes of the Confrontation Clause. In State v. Johnson-Howell, 881 P.2d 1288, 1300 (Kan. 1994), a witness refused to answer any questions while on the stand and was held in contempt. Over the defendant's hearsay objection, the trial court admitted the witness's statements to the police the day after the alleged crime. On appeal, the court held that the witness was available for purposes of the Kansas evidence rules, but was not subject to cross-examination by the defendant because of his refusal to testify. Therefore, the admission of the witness's statements violated both the hearsay rule and the Confrontation Clause. Similarly, in Mercado v. Stinson, 37 F. Supp. 2d 267, 277 (S.D.N.Y. 1998), a witness refused to answer despite the court's threat of contempt, and the court held that the witness's refusal to answer deprived the defendant of a meaningful opportunity to cross-examine the witness in violation of the Confrontation Clause. In United States v. Dorian, 803 F.2d 1439, 1446 (8th Cir. 1986), the court concluded that the five-year-old witness was unavailable for purposes of Evidence Rule 804 because she was so young and frightened that she could not be meaningfully cross-examined. However, relying on the now overruled doctrine of Ohio v. Roberts, the court held that the child's prior statement was admissible over Confrontation Clause objections because of its reliability and trustworthiness. Id.

A refusal to answer, even after a court order, arguably falls on the loss of memory side of the line. Unlike a privilege that, as in Crawford, prevents the witness from taking the stand, the refusing witness, like the amnesiac, is before the jury. The basis for the refusal and the witness's

9

demeanor can be taken into account in evaluating the prior statement just as the loss of memory can be evaluated by the trier of fact. On the other hand, a simple refusal to answer may be viewed as barring the defendant's access to meaningful cross-examination. We believe we need not resolve this issue because here Fowler did not seek an order compelling a response. For the reasons given below, we think a request for an order directing the witness to respond is necessary to preserve a Confrontation Clause objection to prior statements by the witness.

It has long been recognized that the defendant can forfeit the right to confrontation. This notion is sometimes phrased as waiver, but the point is the defendant cannot complain of lack of confrontation that was available but not exercised. 5 Wigmore, Evidence § 1390 at 136(Chadbourn rev. 1974) ("Where . . . the failure to obtain cross-examination is in any sense attributable to the *cross-examiner's own consent or fault,* the lack of cross-examination is of course no objection—according to the general principle that an opportunity, though waived, suffices.") (emphasis in original). Crawford did not explicitly address waiver or forfeiture, but it did make clear that a declarant's statement is not per se inadmissible if the declarant is unavailable. Crawford specifically recognized "forfeiture by wrongdoing" as an exception to the requirement of confrontation as a prerequisite to the admission of testimonial hearsay statements. 541 U.S. at 62. This doctrine holds that a party who has rendered a witness unavailable for cross-examination through a criminal act, e.g., homicide, may not object to the introduction of hearsay statements by the witness on Confrontation Clause grounds. See United States v. Emery, 186 F.3d 921, 926 (8th Cir. 1999). Indiana courts have never addressed the applicability of forfeiture by wrongdoing to a Confrontation Clause violation. The doctrine has a lengthy history and is recognized by the federal courts and courts of several sister states. See, e.g., United States v. Carlson, 547 F.2d 1346, 1359 (8th Cir. 1976); People v. Moore, 2004 Colo. App. LEXIS 1354 (Colo. Ct. App. July 29, 2004); State v. Meeks, 88 P.3d 789, 794 (Kan. 2004); State v. Gettings, 769 P.2d 25, 28-29 (Kan. 1989); Holtzman v. Hellenbrand, 460 N.Y.S.2d 591, 595-96 (N.Y. App. Div. 1983). More than a hundred years ago, the United States Supreme Court explained the rule as follows: "The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own [the accused's] wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against

10

the legitimate consequences of his own wrongful acts." Reynolds v. United States, 98 U.S. 145, 158 (1878).

Both Federal and Indiana Rules 804(b)(1) provide that:

(b) **Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness.

(1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Both Rules 804(a) define "unavailability as a witness" to include situations where the declarant claims a privilege, or testifies to lack of memory, or "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so." Thus, a witness is deemed "unavailable" if she persists in refusing to testify after the court orders her to proceed. Lowery v. State, 478 N.E.2d 1214, 1223 (Ind. 1985) (witness who refused to testify after contempt order was found unavailable and the State was permitted to read the transcript of the witness's testimony at a previous trial); cf. Diggs v. State, 531 N.E.2d 461, 464 (Ind. 1988) (witness who invoked Fifth Amendment and refused to testify at trial should have been deemed unavailable permitting use of deposition at trial pursuant to Indiana Trial Rule 32(A)(3)(e)). It is clear, however, that the Rule's requirement of a court order is a necessary prerequisite to a finding of unavailability of a recalcitrant witness under Rule 804. See United States v. Zappola, 646 F.2d 48, 54 (2d Cir. 1981) (court order essential component in declaration of unavailability); United States v. Oliver, 626 F.2d 254, 254-61 (2d Cir. 1980) (witness not unavailable where court never ordered him to testify despite court's rejection of Fifth Amendment privilege and statement that refusal to testify would nullify plea bargain).

Crawford looked to history to determine the context of the Confrontation Clause. Federal and state evidence rules embody a preexisting set of common law principles.[4] As such, they of-

---

[4] Fed. R. Evid. 804(a) advisory committee's note ("At common law the unavailability requirement was evolved in connection with particular hearsay exceptions rather than along general lines. . . . However, no

fer guidance as to the meaning of "available for cross-examination" as <u>Crawford</u> uses that term. As earlier noted, <u>Crawford</u> endorsed <u>Green</u>, which held that the absence of memory which renders a witness unavailable under Rule 804(a)(3) does not render a person unavailable for cross-examination for purposes of the Confrontation Clause. We therefore cannot import the availability doctrine of Rule 804(a) wholesale into <u>Crawford</u>. And, as <u>Owens</u> pointed out, the title of Rule 804—"Hearsay Exceptions: Declarant Unavailable"—is less than precise. The Rule might more accurately describe itself as dealing not only with unavailability, but rather with "unavailability as a witness, memory loss, and other special circumstances." <u>Owens</u>, 484 U.S. at 563. Even before the adoption of the Rules of Evidence, the common law admitted prior testimony of unavailable witnesses. Then, as under the Rules today, the critical element of an unavailable witness was the opportunity to cross-examine, not whether the defendant availed himself of that opportunity. Wigmore, <u>supra</u>, § 1371 at 55 ("The principle requiring a testing of testimonial statements by cross-examination has always been understood as requiring, not necessarily an actual cross-examination, but merely an *opportunity to exercise the right to cross-examine* if desired." (emphasis in original)). Just as a witness who is not subpoenaed is not unavailable, a witness, such as Roar, who appears at trial but refuses to respond, does not become unavailable until the court orders the witness to answer and the refusal persists.

The Confrontation Clause, like Rule 804, generates "only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" <u>Owens</u>, 484 U.S. at 559 (quoting <u>Green</u>, 474 U.S. at 23-24 (Harlan, J., concurring)); <u>see also</u> <u>Kentucky v. Stincer</u>, 482 U.S. 730, 739 (1987); <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679 (1986); <u>Delaware v. Fensterer</u>, 474 U.S. 15, 19-20 (1985) (emphasis added in <u>Fensterer</u>); <u>Ohio v. Roberts</u>, 448 U.S. 56, 73 n. 12 (1980). If a witness is in the courtroom but refuses to answer, the defendant has the option to seek to compel the witness's testimony.[5] It is not known what the witness's response to such an order will be. Obvious pos-

---

reason is apparent for making distinctions as to what satisfies unavailability for the different exceptions. The treatment in [Rule 804(a)] is therefore uniform.").

[5] A witness's refusal to testify constitutes contempt unless it is based on a privilege. <u>Bryant v. State</u>, 256 Ind. 587, 589, 271 N.E.2d 127, 128 (1971); <u>McIntyre v. State</u>, 460 N.E.2d 162, 165 (Ind. Ct. App. 1984). Indiana Code section 34-47-2-2(1) (2004) provides: "Every person who . . . is sworn to testify as a witness, in any trial or proceeding, in any court of record, and refuses to testify in the trial or proceeding . . . is considered guilty of a direct contempt of court." No privilege applies here. In Indiana, a spouse may properly invoke a privilege as to some communications between husband and wife. I.C. § 34-46-3-1(4).

sibilities are: 1) the witness decides to avoid contempt and repeats the earlier version; 2) the witness claims loss of memory; 3) the witness comes up with a new version; and 4) the witness persists in refusing to answer. If the witness remains recalcitrant, the defendant may conclude that it is preferable to let the trier of fact establish the reasons for the refusal. If the witness, if compelled, will adhere to the initial version given out of court, the refusing witness may be supporting the defendant by refusing to testify. Thus, a defendant's decision not to seek to compel the witness's testimony, like the decision not to subpoena a witness, leaves open the availability of the witness.

Because Roar refused to answer the questions from the defense on cross-examination during Fowler's criminal trial, either the prosecutor or the defendant could have requested the court to conduct a hearing on Roar's refusal and then determine whether Roar was required to answer the questions. See Ind. Code § 35-37-3-1 (2004). We can only speculate as to what the result of such an inquiry would have been. It seems clear, however, that there is a range of possible remarks from very favorable to the defense ("I lied to Officer Decker") to very unfavorable ("my husband threatened me if I testified"). We do not suggest either of these is remotely established on this record. We simply point out that there are very good reasons that a defendant may choose to forego pressing the issue if a witness, such as Roar, refuses to testify. Fowler now contends that he did not have an opportunity to cross-examine Roar, but he could have asked the court to find her in contempt, or inquire as to her reasons. By choosing to allow Roar to leave the witness stand without challenging her refusal to answer questions on cross-examination and then choosing to not recall her to the stand after her statement was admitted through Decker's testimony, Fowler's right to further confrontation was forfeited.

Finally, we join the Court of Appeals in recognizing the extremely difficult situation raised by a witness who is required to testify against a spouse and alleged abuser. Of course the refusal may be because the earlier statement was inaccurate or even a falsification. If so, the re-

However, Indiana long ago abolished the rule of absolute spousal incompetence in favor of a narrow privilege encompassing only confidential communications gained by reason of the marital relationship. Shepherd v. State, 257 Ind. 229, 231, 277 N.E.2d 165, 166 (1971); Smith v. State, 198 Ind. 156, 162, 152 N.E. 803, 805 (1926); Vukodonovich v. State, 197 Ind. 169, 173, 150 N.E. 56, 57 (1926). In addition, for more than 100 years, statutory and case law in Indiana have provided that the privilege for the marital communications does not apply in a criminal case if the spouse was the injured party. Jordan v. State, 142 Ind. 422, 425, 41 N.E. 817, 818 (1895); Doolittle v. State, 93 Ind. 272, 275 (1883).

fusing witness may be motivated by fear of charges of false informing if the story changes or perjury if it does not. Officer Decker testified that before trial he told Roar that he might file charges for making a false crime report if she did not testify at Fowler's trial. The Court of Appeals pointed out the difficult choice this presents:

> Given the psychological complexities of domestic violence cases, it is not at all clear to us that such an approach in trying to "encourage" a victim to testify is desirable. One recent scholarly article estimates that between eighty and ninety percent of domestic violence victims recant their accusations or refuse to cooperate with a prosecution. See Tom Lininger, Evidentiary Issues in Federal Prosecutions of Violence Against Women, 36 Ind. L. Rev. 687, 709 n.76 (2003). The reasons why a victim might choose to recant or not cooperate are varied and complex, including a fear of additional violence by the abuser, a belief that the abuser will "change" if no prosecution occurs, and legitimate economic concerns if the abuser was the primary financial provider and is facing prison time. See Comment, All States Should Adopt Spousal Privilege Exception Statutes, 55 J. Mo. B. 214, 249 (1999).

Fowler, 809 N.E.2d at 965. The Court of Appeals pointed out the view that "a domestic violence victim should not be placed in the situation of being intimidated not only by the aggressor, but also by the State and its representatives." Id. We agree. We think the Court of Appeals understated the problem. To threaten Roar with false informing is appropriate only if the prosecutor has reason to believe she did in fact falsely inform. And if that is the case, no prosecution of Fowler is proper. It is not inappropriate for an officer to point out a witness's potential criminal exposure. But to "encourage" a witness by threatening prosecution of a person believed to be innocent is not only inappropriate, it is a crime. See I.C. § 35-45-2-1 (Intimidation).

**Conclusion**

Had the trial court held a hearing and determined that Roar was not required to respond in cross-examination, then Fowler would have a proper claim that he did not have the opportunity for cross-examination that the Confrontation Clause requires. Because no efforts were made to compel Roar's answers on cross-examination when she was on the witness stand, we hold that Fowler's right to confront Roar was forfeited.

The judgment of the trial court is affirmed.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ. concur.