


FILED

Sep 26 2025, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Akeenen Anton Lamar Hunt,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

September 26, 2025

Court of Appeals Case No.
24A-CR-1876

Appeal from the Hancock Circuit Court

The Honorable R. Scott Sirk, Judge

Trial Court Cause No.
30C01-2312-F2-002169

---

**Opinion by Judge Felix**
Judge Mathias concurs.
Judge Foley concurs in result with separate opinion.

**Felix, Judge.**

## Statement of the Case

Akeenen Hunt repeatedly rammed his vehicle into his ex-girlfriend A.R.'s vehicle until her vehicle broke down. When A.R. attempted to flee on foot, Hunt chased her down, struck her, and dragged her back to her vehicle. Ultimately, the pair returned to A.R.'s residence where he struck her with a belt before raping her. The State charged Hunt with 17 criminal counts arising from this protracted episode of domestic violence. A jury convicted Hunt of 15 counts—among them, rape and intimidation. Hunt now appeals, presenting four issues for our review, which we revise and restate as the following two issues:

1. Whether the trial court abused its discretion regarding certain evidence at trial; and
2. Whether the State presented sufficient evidence to support Hunt's rape and intimidation convictions.

We affirm.

## Facts and Procedural History

Hunt and A.R. dated for approximately 18 months before ending their relationship in July 2023. After the relationship ended, A.R. told Hunt she was moving to Texas, but she secretly moved to Greenfield, Indiana instead. On December 12, A.R. returned home from work and fell asleep on her couch. Around midnight, Hunt called A.R. and said, "[Y]ou're not going to tell me Happy Birthday[?]" Tr. Vol. III at 220. The two spoke for a short time, and

A.R. recalled that Hunt sounded angry. A.R. went back to sleep but awoke to the sound of Hunt kicking in her front door. With bare feet and wearing shorts and a t-shirt, A.R. made it to her vehicle and attempted to flee. Hunt followed A.R. in his vehicle and proceeded to ram his vehicle into A.R.'s Jeep "several times in several different locations," with sufficient force to deploy his air bags. *Id.* at 225.

[4] A.R. was in a parking lot when her Jeep would no longer move. A.R. then got out of the Jeep and "ran towards a building that . . . had lights on." Tr. Vol. III at 205. Hunt followed A.R. and "hit [her] in the face," causing her to fall. *Id.* Hunt then "grabbed [her] by [the] hair." *Id.* A.R. racked her brain to "think[] of anything [she] could say to have [Hunt] calm down," so after retrieving her boots from her Jeep, A.R. walked with Hunt back to her home. *Id.* at 206

[5] On the walk back to the house, Hunt struck A.R. in the head again. When they arrived at the home, Hunt struck A.R. "three to four times" with a belt. Tr. Vol. III at 233. Fearful Hunt would kill her because of "how angry he was," *id.* at 235, A.R. wiped blood off her face and body, before she initiated sexual intercourse with Hunt, believing "it would calm [Hunt] down," *id.* at 208. A.R. said she "felt like [she] did have to do it" and "did what [she] did to . . . keep [Hunt] calm and not anger him so much." *Id.* "[A]fter maybe the second time of sex," A.R. asked if she could use the restroom, and Hunt agreed. *Id.* at 235. Inside the restroom, A.R. called a friend and requested that the police be called and sent to her house. After the call, A.R. returned to bed.

[6] The State charged Hunt with 17 counts, among them, rape as a Level 3 felony[1] and intimidation as a Level 6 felony[2]. Hunt subpoenaed A.R. for a deposition, which took place on May 23, 2024. The State attended the deposition, during which it served A.R. with a subpoena that required her appearance at Hunt's jury trial. Ahead of trial, A.R. failed to appear for a scheduled meeting with the prosecutor, and the prosecutor's office was unable to contact her via phone, text, or e-mail. On July 15—the day before trial—an investigator with the prosecutor's office drove to A.R.'s residence and knocked on the door, but "nobody answered the door." Tr. Vol. II at 216–17. That same day, Hunt's counsel emailed the trial court and the prosecutor, relaying that A.R. left the United States, was in Dubai, and would not be coming to the jury trial. The State confirmed with Homeland Security that A.R. flew to Dubai at 8:00 p.m. on July 14.

[7] On July 16, the trial began as scheduled. The following day, the State filed a written motion to admit A.R.'s deposition testimony on the basis that A.R. was unavailable. The trial court granted the motion. On the third day of trial, Hunt's counsel alerted the trial court that counsel recently spoke with A.R., who said she was available to give remote video testimony between 12:00 p.m. and 1:00 p.m. that afternoon. The trial court took a brief recess, giving the State the opportunity to speak with A.R. The State then contacted A.R., who

---

[1] Ind. Code § 35-42-4-1(a)(1).

[2] I.C. § 35-45-2-1(a)(1).

answered from a noisy environment with traffic and music in the background. Within one minute, the State's call with A.R. dropped, and A.R. did not answer subsequent calls. The trial court agreed with the State that A.R. was unavailable, and therefore, the State could read admissible portions of A.R.'s deposition testimony into the record. The trial court granted the State's request to redact excerpts from A.R.'s responses where she stated that she did not "feel like" she was raped. Tr. Vol. III at 183, 185. The deposition testimony with the requested redactions was ultimately read into the record.

[8] The jury found Hunt guilty of 15 of the 17 counts, including rape as a Level 3 felony and intimidation as a Level 6 felony. The trial court sentenced Hunt to a total of 46 years, with 30 years executed and 16 years suspended to probation. This appeal ensued.

## Discussion and Decision

### 1. The Trial Court Did Not Abuse Its Discretion Regarding Certain Evidence at Trial

[9] Hunt claims that the trial court erred in admitting and excluding certain evidence at trial. We review rulings on admissibility of evidence for an abuse of discretion. *Russell v. State*, 234 N.E.3d 829, 858 (Ind. 2024) (quoting *Conley v. State*, 972 N.E.2d 864 (Ind. 2012)), *cert. denied*. "[W]e may affirm the trial court's decision on any basis supported by the record," *Means v. State*, 201 N.E.3d 1158, 1163 (Ind. 2023) (citing *Ramirez v. State*, 174 N.E.3d 181, 190 n.2 (Ind. 2021)), and we will reverse "only where the decision is clearly against the logic and effect of the facts and circumstances," *Russell*, 234 N.E.3d at 858

(quoting *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001)). Hunt claims that the trial court abused its discretion by (a) admitting A.R.'s deposition testimony and (b) excluding portions of A.R.'s deposition testimony. We address each argument in turn.

### a. Admission of A.R.'s Deposition Testimony

[10] Hunt argues the admission of A.R.'s deposition testimony violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Appellant's Br. at 17. The Confrontation Clause provides criminal defendants the right to confront and cross-examine witnesses. *Crawford v. Washington*, 541 U.S. 36, 57 (2004). However, a witness's prior testimony may be admitted if (1) the witness is unavailable at the time of trial and (2) the defendant had the prior opportunity to cross-examine the witness. *Howard v. State*, 853 N.E.2d 461, 465 (Ind. 2006) (citing *Crawford*, 541 U.S. at 68). Hunt does not dispute that he had a prior opportunity to cross-examine A.R. during her deposition testimony. Rather, Hunt maintains that A.R. was available to testify remotely via Zoom, and therefore, the trial court erred in determining A.R. was unavailable to testify.

[11] "Whether a witness is unavailable for purposes of the Confrontation Clause is a question of law" that we review de novo. *Fowler v. State*, 829 N.E.2d 459, 465–66 (Ind. 2005). A witness is unavailable if she is "absent from the trial" and the proponent of the witness's deposition testimony has been unable "by process or by other reasonable means" to "procure . . . the declarant's attendance." Ind. Evidence Rule 804(a)(5)(A). In a criminal prosecution, a witness for the State

is unavailable for purposes of the Confrontation Clause requirement only if the prosecution "made a good faith effort to obtain the absent witness['s] attendance at trial." *Garner v. State*, 777 N.E.2d 721, 724 (Ind. 2002). To make a good faith effort, the State must exhaust reasonable means to procure the witness's attendance. *Id.* at 725.

[12] Here, A.R. was subpoenaed to appear in person at Hunt's July 16 jury trial. Rather than comply with the subpoena, A.R. flew to Dubai on July 14. Before trial, the State tried to contact A.R. multiple times, at one point dispatching an investigator to visit A.R.'s residence. Once the State was informed that A.R. went to Dubai, the State worked with Homeland Security to confirm that A.R. was indeed not present in the United States. At trial, the State contacted A.R. on the day she claimed to be available, but the call dropped within one minute and A.R. failed to answer subsequent attempts to contact her. We conclude the State demonstrated it made diligent efforts to secure A.R.'s participation at trial through all reasonable means such that, under the circumstances, the trial court did not err in determining A.R. was unavailable. Therefore, the admission of A.R.'s deposition testimony was not inconsistent with the Confrontation Clause[3].

---

[3] Although not addressed by the parties, we note that the trial court gave Hunt the option to have A.R. testify as a defense witness via Zoom but Hunt declined to call her as a witness. Hunt therefore forfeited any rights to further confrontation. *See Fowler v. State*, 829 N.E.2d 459, 470 (Ind. 2005) (choosing not to recall a witness declared unavailable for refusing to testify "after her statement was admitted through [another's] testimony," resulted in Fowler's right to further confrontation being forfeited.), *cert. denied, abrogated in part on other grounds by Giles v. California*, 554 U.S. 36 (2004).

### b. *Exclusion of Portions of A.R.'s Deposition Testimony*

[13]     Hunt argues the trial court erred in permitting the State to redact A.R.'s deposition testimony, removing excerpts from A.R.'s responses where she stated that she did not believe she was raped. These responses are detailed below. At trial, the jury was tasked with determining whether Hunt committed rape as a Level 3 felony. Pursuant to Indiana Code section 35-42-4-1(a)(1), a person commits rape when the person "knowingly or intentionally has sexual intercourse with another person" when "the other person is compelled by force or imminent threat of force[.]" Here, the trial court agreed with the State that A.R.'s statements were inadmissible under Indiana Evidence Rule 704(b), which prohibits witnesses from testifying to "opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Hunt argued below—and maintains on appeal—that A.R.'s statements fell outside of Evidence Rule 704(b) because A.R. was "not making a legal conclusion or giving an opinion regarding Hunt's guilt or innocence" and was not referring to the "legal definition of rape" but instead the "common understanding of what the term means," with A.R. "expressing that she did not believe she was raped because she initiated the sexual activity, she was not forced, and she was not compelled by a threat of force." Appellant's Br. at 37–38. Additionally, Hunt argues that if victims may testify that they were raped, victims should also be able to testify that they were not raped.

[14]    The State relies on *Williams v. State*, 43 N.E.3d 578 (Ind. 2015), to argue that the excluded statements constituted impermissible legal conclusions under Evidence Rule 704(b) and that the trial court properly excluded them.  In *Williams*, the defendant challenged a detective's testimony that he had "zero doubt in [his] mind that that was a transaction for cocaine."  43 N.E.3d at 580.  In determining the admissibility of this statement, the Indiana Supreme Court explained, "[o]pinion testimony concerning guilt 'invades the province of the jury[.]'"  *Id.* at 581 (quoting *Blanchard v. State*, 802 N.E.2d 14, 34 (Ind. Ct. App. 2004)).  Concluding that the detective's testimony "satisfied every element of the dealing offense[,]" the court in *Williams* held that the trial court abused its discretion by admitting the detective's statement because nothing remained for the jury to decide.  *Id*. at 582.  Specifically, the detective's use of the term "transaction" established the delivery element, and his use of "for cocaine" established the defendant's "knowledge or intent that cocaine was the subject of the exchange."  *Id*.

[15]    *Williams* is distinguishable from the instant case because neither of A.R.'s statements was sufficient to satisfy every element of the rape offense.  The first excluded statement appears[4] to have come from A.R.'s response to a question about where she stood in relation to her car.

---

[4] It is not entirely clear from the record where the excluded language appeared in the deposition transcript, especially because we do not have an unredacted copy of A.R.'s deposition.  We have only what the parties described to the trial court and what was read into the record for the jury.

Q  How far away was your car from where you were standing?

A  Like walking distance probably a couple feet like not that far.

Q  Okay.

A  . . . I feel like some of this is kind of blurry with um I think makes trying to keep this out of my head so much that I mix a lot of our um fights up together.  So I'm at the house it's really hard to explain everything that went like verbatim. Um (is this still me) no I was telling the detectives and stuff that I initially – initially initiated sex and it was under the yes it was under the impression that it would calm him down. You know but it was me that initiated it and um that's the part I was telling him that this has nothing to do with that. Yes, I felt like I did have to do it. I felt like I did what I did to you know keep him calm and not anger him so much but um my – [*I don't feel like it was Rape and I'm not saying that I don't want that as a charge because I don't feel like that was a that that was Rape*].

Tr. Vol. III at 207–08, 183 (excluded statement added and emphasized).  The second excluded statement appears[5] to have been part of A.R.'s answer to a question about how she responded to the hospital's offer of a rape kit.  A.R. stated that she did not want to partake in a rape kit because she did not feel like she was raped.

---

[5] As with the first excluded statement, it is not entirely clear from the record where the excluded language appeared in the deposition transcript, especially because we do not have an unredacted copy of A.R.'s deposition.  *See supra* n.4.

[16] Both excluded statements were framed as A.R.'s feelings or beliefs about the incident, and neither was the result of questioning intended to establish or disprove any specific elements of rape. Read in context, A.R.'s statements about not feeling like the encounter was rape described her subjective experience of the circumstances and did not remove the question of whether Hunt's conduct satisfied the elements of the offense of rape, as defined by the Indiana Code, from the jury's province to decide. Notably, there is no suitable word a witness can use to describe conduct that may or may not be rape without using the word "rape".

[17] Even with A.R.'s subjective layperson's statement that she did not believe she was raped, the jury would still have been free to decide whether there was force or imminent threat of force and whether Hunt acted knowingly. *See* I.C. § 35-42-4-1(a)(1). We find support for this interpretation from the United States Court of Appeals for the Seventh Circuit in its analysis of Federal Rule of Evidence 704. In *United States v. Baskes*, the Court distinguishes "well-established lay meanings" like "agreement", "understanding", "promise", or "commitment" from "conclusion[s] as to the legal implications of conduct." 649 F.2d 471, 478 n.5 (7th Cir. 1980). In other words, there can be a distinction between the colloquial use of a word from its legal meaning. In this instance, where a layperson is describing her opinion of whether a particular act occurred to her, we do not believe her opinion amounts to a legal conclusion as prohibited by Indiana Evidence Rule 704(b). Instead, her opinion is one permitted by Evidence Rules 701 and 704(a). Therefore, A.R.'s statements

characterizing the sexual encounter did not constitute an impermissible legal conclusion under Indiana Evidence Rule 704(b), and the trial court abused its discretion in permitting redaction of A.R.'s statements about whether Hunt had raped her.

[18] Having made the determination that it was error to redact the aforementioned statements, we now must decide whether reversal is necessitated. Errors made by the trial court are not grounds for relief on appeal if they are harmless. Ind. Appellate Rule 66(A). "An error is harmless when it results in no prejudice to the 'substantial rights' of a party." *Hall v. State*, 177 N.E.3d 1183, 1197 (Ind. 2021) (quoting *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018)); *see also* Ind. Appellate Rule 66(A). In conducting our harmless error analysis, factors we consider are "the presence or absence of other, corroborating evidence on material points; whether the impermissibly admitted evidence was cumulative; the overall strength of the prosecution's case; the importance of the impermissible evidence in the prosecution's case; and the extent of cross-examination or questioning on the impermissibly admitted evidence." *Hall*, 177 N.E.3d at 1197 (quoting *Zanders v. State*, 118 N.E.3d 736, 745–46 (Ind. 2019)).

[19] Here, the trial court's error was harmless. Even though A.R. stated, "I don't feel like it was Rape . . . ," Tr. Vol. III at 183, A.R. testified that, although she was the one who initiated the sexual encounter, she felt like she "ha[d] to do it" to calm down Hunt, *id*. at 208. A.R. further testified, "I . . . didn't know whether I was going to live or die in that moment and so it was scary." *Id.* at 209. As a result, considering these facts along with those emphasized in the

next section, the error in excluding A.R.'s statements that she did not feel like she was raped was so minor that it likely would not have had any impact on a reasonable jury. *See Hall,* 177 N.E.3d at 1197.

## 2. The State Presented Sufficient Evidence to Support Hunt's Convictions

[20] Hunt argues there was insufficient evidence to support his convictions for rape and intimidation. Our standard of review for such a claim is as follows:

> "A conviction is supported by sufficient evidence if 'there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Hancz-Barron v. State*, 235 N.E.3d 1237, 1244 (Ind. 2024) (quoting *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015)). This Court reviews only the evidence most favorable to the verdict and the reasonable inferences therefrom, and will reverse only where it is shown that "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Teising* [*v. State*], 226 N.E.3d [780,] 783 [(Ind. 2024)].

*Konkle v. State*, 253 N.E.3d 1068, 1090–91 (Ind. 2025). We do not reweigh the evidence or reassess witness credibility. *Id.* at 1090 (quoting *Teising*, 226 N.E.3d at 783).

### a. Rape

[21] In order to convict Hunt of rape, the State had to prove beyond a reasonable doubt that Hunt knowingly or intentionally had sexual intercourse with A.R. when she was "compelled by . . . imminent threat of force[.]" Ind. Code § 35-

42-4-1(a)(1). Force may be physical or implied and "may be shown even without evidence of the attacker's oral statement of intent or willingness to use a weapon and cause injury, if from the circumstances it is reasonable to infer the attacker was willing to do so." *Jones v. State*, 589 N.E.2d 241, 243 (Ind. 1992) (quoting *Lewis v. State*, 440 N.E.2d 1125, 1127 (Ind. 1982)), *cert. denied*. Hunt argues that "there is no evidence that Hunt forced A.R. to engage in intercourse, . . . threatened to harm her if she did not engage in intercourse, [or] . . . suggested that he would change his behavior if she engaged in intercourse[.]" Appellant's Br. at 35. This is a clear request to reweigh the evidence and reassess witness credibility, which we will not do. *See Teising*, 226 N.E.3d at 783. The jury heard A.R.'s testimony that she initiated sexual intercourse but still found the State proved beyond a reasonable doubt that Hunt committed rape.

[22] Here, the probative evidence supporting the verdict and the reasonable inferences drawn therefrom show that the sexual contact occurred just after Hunt violently broke into A.R.'s home, repeatedly crashed his vehicle into A.R.'s vehicle as she attempted to flee, followed her on foot, pulled her by the hair, made her walk through the woods with limited clothing on, struck her on the head, and struck her with a belt. A.R. testified that she believed Hunt was going to kill her and that she initiated sexual intercourse because she was "under the impression that it would calm [Hunt] down[,] . . . felt like [she] did have to do it[, and] . . . did what [she] did to . . . keep [Hunt] calm and not anger him so much." Tr. Vol. III p. 208. Meanwhile, A.R. secretly called for

help when Hunt gave her permission to use the restroom. From the evidence presented, it was not unreasonable to infer that, when A.R. initiated the sexual intercourse, she was compelled by Hunt's imminent threat of force. Therefore, we cannot say the State failed to present sufficient evidence to support Hunt's rape conviction.

### b. Intimidation

[23] Hunt argues there was insufficient evidence to support his conviction for intimidation as a Level 6 felony because there was no evidence he "communicated a threat to commit murder." Appellant's Br. at 30. However, a threat of murder was not required. Rather, to convict Hunt of intimidation, the State had to prove that Hunt communicated a threat to "commit a forcible felony" with the intent that A.R. be placed in fear that Hunt would carry out the threat. I.C. § 35-45-2-1(a)(4), (b)(1)(A). A forcible felony is "a felony that involves the use or threat of force against a human being, or in which there is imminent danger of bodily injury to a human being." I.C. § 35-31.5-2-138. Our legislature defined the term "threat" to mean "an expression, by words or action, of an intention to . . . commit a crime." I.C. § 35-45-2-1(c)(3).[6] Threat

---

[6] In his reply brief, Hunt cites to *Gaddis v. State*, 680 N.E.2d 860 (Ind. Ct. App. 1997), for the proposition that "[a]cts of violence" and "events that place an individual in fear" cannot "satisfy the communication element of intimidation." Appellant's Reply Br. at 6. But *Gaddis* does not stand for that broad proposition. Rather, the *Gaddis* court merely held that briefly displaying the profile of a handgun through a car window when a driver does not point the handgun at the other driver or vehicle does not communicate a threat. 680 N.E.2d at 861–62.

may be inferred from a defendant's conduct. *See Merriweather v. State*, 128 N.E.3d 503, 516 (Ind. Ct. App. 2019).

[24] Here, the probative evidence supporting the verdict shows that Hunt (1) discerned where A.R. was living, went to her residence in the middle of the night, and angrily called her from outside before he kicked his way in; (2) followed her in his vehicle, rammed, and disabled her Jeep; (3) thwarted A.R.'s attempt to seek safety; and (4) struck and grabbed A.R. before forcing her to walk through the woods with him in her pajamas while ruminating about A.R. living in a residence without him. During this extended violent assault, A.R. believed Hunt was going to kill her. Accordingly, it was not unreasonable for the jury to infer that Hunt intended to place A.R. in fear that he would commit a forcible felony. Additionally, Hunt told A.R., "I should kill both of us," St. Ex. 144 at 9:16–9:18, while they were walking through the woods and after they returned to A.R.'s home where Hunt continued to be violent. (St. Ex. 145 at 1:29–1:47). This was also sufficient to support his conviction for intimidation. *See Rhodes v. State*, 144 N.E.3d 787, 791 (Ind. Ct. App. 2020) (affirming conviction for intimidation where defendant told victim he was going to kill her). We therefore conclude that the State presented sufficient evidence to support Hunt's conviction on intimidation as a Level 6 felony.

## Conclusion

[25] The admission of A.R.'s deposition testimony was consistent with the Confrontation Clause, the trial court's exclusion of portions of A.R.'s

statements was harmless, and the State presented sufficient evidence supporting Hunt's convictions. We therefore affirm the trial court on all issues raised.

[26] Affirmed.

Mathias, J., concurs.
Foley, J., concurs in result with separate opinion.

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Law Office of Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Alexandria N. Sons
Deputy Attorney General
Indianapolis, Indiana

**Foley, Judge, concurring in result.**

[27] I concur in all respects with the majority, except that I part ways with the analysis of the exclusion of portions of A.R.'s deposition testimony (Section 1.b.), and therefore respectfully concur in result.

[28] The majority distinguishes *Williams v. State*, 43 N.E.3d 578 (Ind. 2015), concluding that A.R.'s statement that she didn't feel like she was raped was a description of her subjective experience of the event rather than the pronouncement of a prohibited legal conclusion under Evidence Rule 704(b). Critically, however, there is a lack of record support for the majority's conclusion that A.R.'s use of the term "rape" was an expression of her perception of force rather than a legal conclusion. As noted by the majority, the record did not include an unredacted version of the deposition, so it is unclear exactly where the statement appeared within the deposition testimony. Nonetheless, what is clear is that A.R.'s use of the term "rape" was in direct reference to the criminal act of rape—the offense for which Hunt stood accused of committing at trial—rather than a colloquial use of the term, in that A.R. referenced the "charge" of rape in the redacted statement: "I don't feel like it was Rape and *I'm not saying that I don't want that as a charge* because I don't feel like that . . . was Rape." Tr. Vol. III p. 183 (emphasis added). A.R.'s redacted statement did not reference her perception of force, compulsion, or threat. In contrast, elsewhere in her testimony, A.R. ably described her subjective experience when she testified that she initiated sex with Hunt in order to "calm him down," adding that she "felt like I did have to do it" and "did what I did to

you know keep him calm and not anger him so much[.]" *Id.* at 208.[7] As the Indiana Supreme Court has explained, "[t]he jury, not the witness, is responsible for deciding the ultimate issues in a trial, and opinion testimony concerning guilt 'invades the province of the jury[.]'" *Williams*, 43 N.E.3d at 58 (quoting *Blanchard v. State*, 802 N.E.2d 14, 34 (Ind. Ct. App. 2004)). Here, the ultimate question of whether Hunt committed rape was within the jury's province to decide. A.R.'s characterization of Hunt's conduct in legal terms constituted an impermissible legal conclusion under Evidence Rule 704(b), which the trial court correctly applied in excluding the inadmissible statement.

---

[7] Independent of the excluded statement, there was ample evidence A.R. equivocated about Hunt's responsibility for all charges brought against him. Indeed, A.R. testified at length about when she learned of the charges, recounting that she thought certain charges were "absurd" and "exaggerated probably," and that she "wasn't understanding the charges compared to [her] statements" and struggled to "understand[] where [the police] got a lot of the charges from." Tr. Vol. III p. 211. Later in her deposition, A.R. emphasized that, when it came to the sexual encounter at the residence, "it wasn't [Hunt] that originally mentioned it you know" and that "[i]t was definitely [her] decision to change the dynamics of . . . the situation." *Id.* at 234.