## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 09 2018, 5:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Louis G. Coulter, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | October 9, 2018 <br><br> Court of Appeals Case No. 18A-CR-34 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Teresa L. Cataldo, Judge <br><br> Trial Court Cause No. 20D03-1611-F1-10 |

**Altice, Judge.**

### Case Summary

[1] Following a jury trial, Louis G. Coulter was convicted of three counts of Level 1 felony child molesting, and Coulter admitted being a repeat sexual offender. The trial court sentenced Coulter to an aggregate sentence of 100 years in prison. On appeal, Coulter presents the following restated issues for review:

1. Did the trial court abuse its discretion by allowing into evidence certain testimony related to pornographic videos that Coulter had viewed on his computer?

2. Did the State present sufficient evidence to sustain the convictions?

3. Is the 100-year sentence inappropriate?

[2] We affirm.

### Facts & Procedural History

[3] In early August 2016, J.L. moved from Michigan to Elkhart, Indiana to live with her maternal grandmother (Grandmother) for a period of time while J.L.'s mother (Mother) dealt with a stressful period in her own life. J.L. lived with Grandmother through August and September, when J.L. was eleven years old.

[4] Coulter, age fifty-eight at the time, also lived in Grandmother's apartment during this period of time. He had been dating Grandmother since July. Grandmother worked the night shift five nights a week from 11:00 p.m. to 7:00 a.m. Coulter watched J.L. while Grandmother worked. Coulter regularly molested J.L. while he was alone with her at night. J.L. was scared to say

anything to Grandmother and Coulter told her not to tell anyone. When J.L. returned to Mother's care around the beginning of October, however, J.L. told Mother about the abuse. The police were contacted, and J.L. was examined by a sexual assault nurse examiner (the SANE).

[5] According to J.L., Coulter began molesting her in August by touching her vagina[1] with his hand under her clothing. J.L. also described Coulter engaging in anal sex with her in the living room while she was naked on her hands and knees. This happened "[a] lot" of times. *Transcript Vol. III* at 106. J.L. reported associated rectal pain to the SANE, and J.L. testified that it hurt and that she would sometimes tell Coulter to stop.

[6] In addition to anal sex, J.L. testified that Coulter would make her touch his penis and, on at least one occasion, he put his penis in her mouth and ejaculated. J.L. indicated that she spit his ejaculate into an ashtray because it "tasted weird." *Id*. at 123. Additionally, J.L. reported to the SANE that Coulter would put his fingers in her vaginal area and that he "licked my privates." *Transcript Vol. IV* at 134.

[7] Finally, J.L. testified that Coulter frequently showed her "[b]ad things" on his computer at night when they were alone. *Transcript Vol. III* at 109. Some of the videos involved animals and naked humans. A forensic analysis of Coulter's

---

[1] J.L. referred to her vagina as her "private" and described that area as the front "[u]nder part of your body." *Transcript Vol. III* at 78, 101. She also referred to a penis as "private" or "the privates". *Id.* at 78; *Transcript Vol. IV* at 126.

computer revealed that, during the relevant time period, pornographic videos involving bestiality, anal sex, and fellatio had been viewed. The computer's search history included searches for "zoo pussy", "Girls inserting their tampons", "Blow job movies", "how to give fellatio", and other related searches.[2] *Id.* at 178-180.

[8] Police interviewed Coulter for about three hours on October 17, 2016. Coulter acknowledged that pornographic videos, including some of bestiality, would be found on his computer. With regard to J.L., Coulter indicated that he was regularly left alone with her at night, but he denied that he ever molested her. Coulter told the detectives that he fell in love with J.L. quickly, that he spoiled her and bought her gifts, and that she often sat on his lap. Coulter agreed that girls J.L.'s age could "certainly" make men aroused. *Id.* at 184. He indicated that on at least two occasions after J.L. had sat on his lap, he thought about her sitting on his lap and actually "got an erection" thinking about it. *Id.* at 185.

[9] On November 7, 2016, the State charged Coulter with three counts of Level 1 felony child molesting. The State later amended the charging information to include an allegation that Coulter was a repeat sexual offender.

[10] The case proceeded to a bifurcated jury trial on November 6-8, 2017. During the first phase, the jury found Coulter guilty of all three counts of child

---

[2] Coulter also searched for "rohypnol", which is commonly known as the "date rape drug". *Transcript Vol. IV* at 178-79.

molesting as charged. Thereafter, Coulter admitted being a repeat sexual offender based on his 1997 conviction for Class B felony child molesting.[3] At the sentencing hearing on December 14, 2017, the trial court sentenced Coulter to forty-five years on each count of child molesting. The court ordered Counts I and II to be served consecutively to each other and Count III to be served concurrently with Count I. The trial court enhanced the forty-five-year sentence on Count I by ten years based on Coulter being a repeat sexual offender. Thus, Coulter received an aggregate sentence of one hundred years in prison. He now appeals. Additional information will be provided below as needed.

## Discussion & Decision

### 1. Admission of Evidence

Coulter contends that the trial court abused its discretion when it allowed the State to continue questioning him, after an eventual objection, about specific pornography websites he had visited. The State's response is three-fold: (1) the objection was untimely, (2) the evidence was relevant and not unduly prejudicial, and (3) any error in its admission was harmless.

---

[3] In 1997, Coulter pled guilty to molesting his own daughter for years, when she was between eight to fifteen years old. Specifically, he pled guilty to Class B felony child molesting, Class B felony sexual misconduct with a minor, Class D felony child solicitation, Class C felony sexual misconduct with a minor, five counts of Class C felony child molesting, and two counts of Class D felony unlawful delivery of legend drugs.

[12]     We review evidentiary rulings for an abuse of discretion, which will be found where the ruling is clearly against the logic and effect of the facts and circumstances. *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015). On issues of relevance and unfair prejudice, a trial court's discretion is wide. *Snow v. State*, 77 N.E.3d 173, 176 (Ind. 2017). To determine whether an error prejudiced the defendant and, thus, constitutes reversible error, we assess the probable impact the evidence had on the jury in light of all the other evidence that was properly presented. *Williams*, 43 N.E.3d at 581. "If the conviction is properly supported by other independent evidence of guilt, the error is harmless." *Id*.

[13]     On direct examination, Coulter testified that he looked at pornography on his computer "rarely" and never showed it to J.L., which was contrary to J.L.'s testimony. *Transcript Vol. IV* at 170. On cross-examination, the State inquired more specifically regarding his search and viewing history, which was discovered during the forensic examination of his computer. Coulter admitted that he was interested in pornography relating to "women giving oral sex to men" and, more recently, bestiality involving dogs and women. *Id*. at 178. Without objection, Coulter acknowledged searching the internet for "zoo pussy", "rohypnol", "Tampon insertion", "Girls inserting their tampons", "Blow job movies", "X-rated full Brazilian wax", and "how to give fellatio", among other similar searches. *Id*. at 178-80. The State then questioned Coulter regarding some of the websites that he had visited. Coulter testified that he could not recall if he had looked at one specific website but stated, "I've looked at several pornography websites." *Id*. at 180. The State then asked: "Some

other websites were a video with the site name of 'Homemade porn compilation of girls taking facials, free porn videos, YouPorn [phonetic].' That's on 'YouPorn.' Did you watch that?" *Id*. Coulter responded, "I don't know. Probably." *Id*.

[14] At this point, defense counsel interrupted and stated, "I think the State has made it's point". *Id*. at 181. Counsel attempted to clarify that the objection was "based on '404'" and that the evidence was irrelevant and prejudicial. *Id*. at 182. The trial court overruled the objection. The State then asked Coulter about the following video titles: "petite teen deep throat cum shot", "German amateur teen genie first anal", "Nasty gagging throat f*ck", "Bedtime yogurt and blow job: making out with sexy girl", and "blonde hot slut is sucking on his dick and balls". *Id*. at 182-83. Coulter indicated that he probably watched these on his computer but that he could not remember them specifically. Thereafter, the State turned to a different line of questioning.

[15] In apparent recognition that he cannot now challenge any of the evidence related to his search history and pornography viewing habits that was admitted prior to his objection, Coulter argues that the trial court erroneously allowed the State to continue this line of questioning after he finally objected. Coulter's appellate argument in this regard is difficult to follow. He sets out Ind. Evidence Rule 404(b) but then fails to apply it, arguing only generally that the evidence was irrelevant and unduly prejudicial. We cannot agree.

[16] "Evidence of a prior wrongful act is not admissible if its sole apparent purpose is to show the defendant acted in conformity with that character." *Pierce v. State*, 29 N.E.3d 1258, 1269-70 (Ind. 2015) (citing Evid. R. 404(b)). Such evidence, however, may be admissible for other purposes, provided it survives Ind. Evidence Rule 403 balancing. *Pierce*, 29 N.E.3d at 1269 (pornography found on defendant's computer not presented as propensity evidence but rather "it supported the young victims' testimony that Pierce exposed them to pornography"); *see also Laird v. State*, 103 N.E.3d 1171, 1178 (Ind. Ct. App. 2018) ("the evidence of Laird's internet search history is admissible under the 'plan' exception in Rule 404(b)(2) because the searches were close in time to when Laird committed the acts against C.L. and because Laird searched the internet for behavior [very similar] to what he did to C.L."), *trans. denied*.

[17] Here, the State's brief cross-examination of Coulter regarding the specific titles of pornography videos that he had viewed on his computer during the months that he molested J.L. was not offered to prove his character. Rather, it supported J.L.'s testimony that indicated Coulter frequently showed her pornography on his computer when they were alone. Additionally, the titles reveal that the videos involved some of the same sex acts – anal intercourse and fellatio – that he performed with J.L. The probative value of this evidence is not outweighed by any danger of unfair prejudice, especially in light of the other evidence that was admitted without objection regarding his search history and viewing habits. *Pierce*, 29 N.E.3d at 1270 ("on these facts, we find the domain names admissible as well, especially in light of the caretakers'

descriptions of child pornography, which were already admitted into evidence without objection").

## 2. Sufficiency of the Evidence

Coulter next asserts that the evidence was not sufficient to convict him of child molesting. When we consider a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess the credibility of the witnesses. *Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016). Instead, we consider only the evidence and reasonable inferences supporting the conviction. *Id*. We will affirm if there is probative evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id*. Further, "it is well settled that the uncorroborated testimony of the victim, even if the victim is a minor, is sufficient to sustain a conviction for child molesting." *Carter v. State*, 31 N.E.3d 17, 30 (Ind. Ct. App. 2015), *trans. denied*.

On appeal, Coulter blatantly disregards our standard of review and asks that we "assess the caliber and quality of the relevant evidence". *Appellant's Brief* at 19. He argues that his convictions rest solely on J.L.'s uncorroborated testimony. Coulter also notes that J.L. kept quiet during the two months she lived in Elkhart and did not mention the abuse to Grandmother, teachers, or others. Finally, Coulter notes that he has consistently denied the allegations.

We reject Coulter's invitation to reweigh the evidence. J.L.'s testimony was sufficient to establish that she suffered two months of horrific and repeated sexual abuse at the hands of Coulter. He began the abuse by touching J.L.'s

vagina underneath her clothes when he was alone with her at night. He also frequently had her watch pornography with him, which even included bestiality videos. J.L. testified that Coulter forced her on numerous occasions to submit to anal intercourse. J.L. described how she was on her hands and knees while Coulter penetrated her from behind. She testified that this hurt her and that she would sometimes ask him to stop. During one instance of fellatio, Coulter ejaculated in J.L.'s mouth, and she spit the ejaculate into an ashtray due to its taste. When treated by the SANE, J.L. detailed this abuse by Coulter.

[21] In addition to J.L.'s testimony, the State presented evidence that Coulter was alone with J.L. five nights per week while Grandmother was at work. Coulter acknowledged during his interview with police that he had become aroused on two separate occasions after J.L. sat on his lap. The forensic analysis of Coulter's computer, along with Coulter's own testimony, also revealed that during the relevant time period Coulter searched for and/or viewed pornography involving bestiality, fellatio, and anal sex, among other things. The State presented ample evidence to support the convictions.

### 3. Sentencing

[22] Finally, Coulter contends that his aggregate sentence of 100 years in prison is inappropriate in light of the nature of his offenses and his character. Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. *See Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014), *cert. denied*. Pursuant to Ind. Appellate Rule 7, the Supreme Court

authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Per App. R. 7(B), we may revise a sentence "if after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7). "Sentencing review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[23] It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp*, 9 N.E.3d at 1292. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original). Further, Coulter bears the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[24] Here, the trial court imposed forty-five years for each of the three Level 1 felony child molesting convictions, which is five years short of the maximum sentence. *See* Ind. Code § 35-50-2-4(c) (sentencing range of between twenty and fifty years for Level 1 felony child molesting, with the advisory sentence being thirty

years).  The trial court also ran only Counts I and II consecutively, ordering Count III to be served concurrently with Count I.  The trial court then sentenced Coulter to the maximum additional fixed term of ten years for being a repeat sexual offender.  *See* I.C. § 35-50-2-14(f).  Thus, Coulter received an aggregate sentence of one hundred years, which was sixty years shorter than the maximum total sentence he faced.

[25]    With respect to the nature of his offenses, Coulter argues that his offenses were no worse than the average Level 1 felony child molesting offense, and he notes that there was no evidence that he used force or threat of force.  Coulter ignores the fact that his sexual abuse of eleven-year-old J.L. occurred countless times, in various forms, over the two-month period in which he was entrusted by Grandmother to care for J.L.  In addition to the repeated sexual abuse, Coulter frequently exposed J.L. to pornography, including bestiality videos.  The nature of Coulter's offenses clearly justifies partially enhanced and consecutive sentences.[4]

[26]    Coulter's character is reflected in his appalling and eerily similar criminal history.  In 1997, Coulter was convicted of molesting his own daughter when she was between the ages of about eight and fifteen years old.  He has eleven felony convictions related to this abuse – two Class B felonies, six Class C

---

[4] The consecutive sentences were based on two separate types of sexual abuse.  Count I dealt with oral sex and Count II addressed one instance of anal sex that occurred prior to the time J.L. started school that summer.  Count III, which was ordered to be served concurrently, was based on an occurrence of anal sex that happened after the start of school.

felonies, and three Class D felonies. Of particular note, Coulter placed his penis in his daughter's mouth, fondled her, offered her money to engage in fellatio, and surreptitiously drugged her with what he believed to be Valium and Xanax[5] so that he could molest her at night. The abuse went on for years until his daughter finally reported it. The same would have likely occurred in this case had J.L. not had the courage to come forward when she did. Coulter received a rather lenient sentence in 1997, fifteen and one-half years with five of those years suspended to probation. Coulter violated his probation in 2004, and the case was closed in August 2006. In 2012, Coulter was convicted of Class D felony failure to register as a sex offender, which was later reduced to a misdemeanor conviction. Coulter has the gall to argue that his criminal history is insignificant. On the contrary, this history, coupled with the instant offenses, reflects Coulter's dangerous, predatory character. Coulter has not convinced us that his sentence is inappropriate in light of the nature of his offenses or his character.

[27] Judgment affirmed.

Brown, J. and Tavitas, J., concur.

---

[5] Coulter purchased these pills on separate occasions from an unknown individual at a Handy Andy store near his home.