## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 14 2017, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

P. Jeffrey Schlesinger
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ice Heard,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 14, 2017

Court of Appeals Case No.
45A03-1611-CR-2521

Appeal from the Lake Superior Court

The Honorable Salvador Vasquez, Judge

Trial Court Cause No.
45G01-1307-FB-61

**Barnes, Judge.**

## Case Summary

[1] Ice Heard appeals his conviction for Class B felony aggravated battery. We affirm.

## Issue

[2] The issue before us is whether the trial court properly admitted evidence in Heard's jury trial.

## Facts

[3] On July 8, 2013, twenty-two-year-old Harold Nichols was hanging out with several friends in Munster. That afternoon, they walked from Munster to Hammond and then headed back to Munster. As they were returning to Munster, Nichols and his friends encountered a group of people that included Heard's younger brother, William, and his sixteen-year-old sister, as well as other young women. Nichols did not know any of these people. One of Nichols's friends talked to the young women. As Nichols and his friends began to move on, William said, "why you're trying to talk to my little sister[?]" Tr. Vol. II p. 42. Nichols's friend said he did not want any problems, and he, Nichols, and the others began walking away.

[4] As the group approached a bridge that crossed over from Hammond into Munster, Heard approached them and said, "which one of y'all was trying to talk to my little sister?" *Id.* at 45. Heard told the group to leave his block and not come back. As Heard was talking, a van pulled up, and one of its occupants got out and handed Heard a gun. Heard then began firing the gun

toward Nichols and his friends; one of the shots hit Nichols in the ankle as he was trying to run away.

[5]     While police were investigating the crime scene, an anonymous phone call reported that the shooting was committed by a person with the "street name Ice." Tr. Vol. III p. 209. Sergeant James Onohan of the Hammond Police Department knew Heard and where he lived from prior interactions with him. Sergeant Onohan also knew of another individual in Hammond who went by the nickname "Ice Man," but that person was never investigated as a suspect in the shooting. *Id.* at 134. After receiving the call about "Ice," Sergeant Onohan went to Heard's residence, found William there, and brought him outside. Other officers drove Nichols's friends by the residence, and they identified William as the young man they saw earlier with the group of young women. Police then prepared a photo array that included Heard and showed it to Nichols and his friends. Nichols and one of his friends identified Heard as the shooter in the photo array. At trial, a second friend identified Heard as the person who was shooting.

[6]     The State charged Heard with Class B felony aggravated battery, Class C felony battery with a deadly weapon, and Class C felony battery resulting in serious bodily injury. At Heard's jury trial, the anonymous phone call to police was brought up several times. Counsel for Heard was the first to mention it, when he asked an investigating officer during cross-examination, "At some point, there is information that's provided over the radio about an anonymous call that talk [sic] about somebody with the street name Ice committing this crime;

is that correct?" *Id.* at 73. Counsel for Heard also wanted to explore the identity of "Ice Man" further during trial, but the trial court refused to allow him to do so.

[7] During Sergeant Onohan's testimony, the State stopped its direct examination, asked to approach the bench, and said:

> At this point, Judge, I wanted to make an offer of proof. I anticipate eliciting testimony that would be prejudicial to the defendant and getting vital and relevant in this case. That is that Onohan had some familiarity with Mr. Ice Heard and where he lived. I wanted to approach in order to phrase it in a way that is consistent with your Honor's wishes and does the least damage, in terms of prejudice to the defendant, while still getting to the relevant portions that is -- that your Honor has already heard, that there was an anonymous tip about the street name Ice.
>
> Mr. Onohan, through his work as a gang officer, was familiar with Ice Heard and knew that he lived close by. So I don't know if I can ask—

*Id.* at 113. There then ensued a discussion between the State, defense counsel, and the trial court of what Sergeant Onohan would be allowed to testify about. In the end, Sergeant Onohan testified:

> Q:     Okay. And are you familiar with a person known to you as Ice Heard?
>
> A:     Yes.
>
> Q:     From prior contacts?

A:     Yes.

Q:     Were you familiar with where that individual lived?

A:     Yes.

*Id.* at 118.

[8]     The jury found Heard guilty of all three counts as charged.  The trial court entered judgment of conviction and sentenced Heard only for Class B felony aggravated battery.  He now appeals.

## Analysis

[9]     Heard contends the trial court improperly admitted evidence of the anonymous phone call that identified "Ice" as the shooter and evidence that Sergeant Onohan had "prior contacts" with Heard and knew where he lived.  *Id.*  "We review evidentiary rulings for abuse of discretion resulting in prejudicial error." *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015).  An abuse of discretion occurs if a ruling "is either clearly against the logic and effect of the facts and circumstances before the court, or when the court misinterprets the law."  *Id.* We may affirm a decision regarding the admission of evidence if it is sustainable on any basis in the record.  *Johnson v. State*, 6 N.E.3d 491, 499 (Ind. Ct. App. 2014).  Also, we will disregard any error in the admission of evidence unless it affects the substantial rights of a party.  *Id.*  In determining the prejudicial effect of an evidentiary ruling on a party's substantial rights, we consider the probable impact of the improperly-admitted evidence on the fact

finder. *Id.* "Any error caused by the admission of evidence is harmless if the evidence was cumulative of other, appropriately admitted, evidence." *Id.*

[10] With respect to the evidence regarding the anonymous phone call, we agree with the State that it constituted invited error, if error at all. Under the invited error doctrine, a party cannot take advantage of an error that he or she commits, invites, or which is the natural consequence of his or her own neglect or misconduct. *Robey v. State*, 7 N.E.3d 371, 380 (Ind. Ct. App. 2014), *trans. denied*. A defendant cannot seek reversal of a conviction based on testimony that defense counsel purposely elicited during cross-examination of a State's witness. *See Cole v. State*, 970 N.E.2d 779, 783 (Ind. Ct. App. 2012). Here, defense counsel first brought up the anonymous phone call and its content during cross-examination of an investigating officer; he also cross-examined a different officer about the phone call. Heard cannot claim reversible error based on those questions and answers. *See id.* Moreover, to the extent the State also mentioned the anonymous phone call, it did so only after Heard had done so and in addition to Heard's own questioning. At most, the State's mentions of the phone call would only be cumulative of Heard's own questioning and, thus, harmless error. *See Robey*, 7 N.E.3d at 381.

[11] Next, we address Heard's contention that the trial court violated Indiana Evidence Rule 404(b) in allowing Sergeant Onohan to testify that he knew Heard from "prior contacts" and knew where Heard lived. Tr. Vol. III p. 118. Evidence Rule 404(b) provides, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular

occasion the person acted in accordance with the character." It may be admissible, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Heard asserts that under this rule, evidence of a defendant's prior contacts with police is irrelevant and highly prejudicial and, furthermore, "[e]xplaining the reasons for the officer's conduct or his presence at the scene is not material to proving the elements of the crime charged." *Swain v. State*, 647 N.E.2d 23, 25 (Ind. Ct. App. 1995), *trans. denied*.

[12] Even if we were to conclude that this evidence was erroneously admitted, it was harmless. Sergeant Onohan testified only very briefly that he knew Heard and where he lived, without giving any details as to what those previous contacts were. The State took care to limit the extent of the testimony before it began. It was a brief explanation of how and why Sergeant Onohan ended up at Heard's house soon after the shooting. Most importantly, there was overwhelming other evidence that Heard was the shooter, including three eyewitness identifications of Heard himself, and several others of William, Heard's brother, having been the young man who was attempting to protect his and Heard's younger sister before Heard arrived. We consider the impact of Sergeant Onahan's testimony to be so slight in comparison to the evidence of Heard's guilt that it did not impact his substantial rights.

## Conclusion

[13] The trial court did not commit reversible error in admitting evidence during Heard's jury trial. We affirm his conviction.

[14]    Affirmed.

Baker, J., and Crone, J., concur.