## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 01 2018, 8:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John Antwione Ewing,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 1, 2018

Court of Appeals Case No.
18A-CR-783

Appeal from the Marion Superior Court

The Honorable Steven J. Rubick, Magistrate

Trial Court Cause No.
49G01-1708-F5-29358

**Baker, Judge.**

[1] John Ewing appeals his convictions for Level 6 Felony Domestic Battery[1] and Class A Misdemeanor Unlawful Possession of a Firearm by a Person Previously Convicted of Domestic Battery,[2] arguing that the trial court inappropriately admitted certain evidence. Finding no error, we affirm.

# Facts

[2] From roughly September 2016 to early August 2017, Latoya Peterson and Ewing were in an on-and-off-again sexual relationship. On August 6, 2017, Peterson was resting at her home when she received a call from Ewing's sister, who informed Peterson that Ewing was "drunk" and that "he had tried to jump on Dion's daughter." Tr. Vol. II p. 16. Peterson went to lock the door, but before she could do so, Ewing had already entered her house. Peterson suspected that Ewing was intoxicated because he could barely stand, smelled of alcohol, and was slurring his words. Inside, Ewing collapsed on her floor and repeatedly told Peterson that he "hate[d] all you mother f**kers." *Id*. at 17.

[3] Suddenly, Ewing snapped, grabbed Peterson by the neck, slammed her into the kitchen island and sink, and poked her in the head. Peterson testified that he tossed her around "like a rag doll." *Id*. at 19. Peterson told Ewing to leave, but he said he would not leave unless she helped him pack his things. The two went

---

[1] Ind. Code § 35-42-2-1.3(b).

[2] Ind. Code § 35-47-4-6(a).

upstairs to gather Ewing's belongings. While upstairs, Ewing choked Peterson. He then retrieved his gun and forced Peterson to her knees, pointing his gun at the back of Peterson's head while threatening to kill her and her children.

[4] Peterson escaped and ran down the stairs, but Ewing caught up with her and threw her into the living room walls. Peterson then called 911 but was placed on hold. She tried to leave through her garage, but Ewing had parked his car so that she could not drive away. Peterson tried to leave on foot, but Ewing threw her back into the garage. Peterson ran inside her home, slammed and barricaded the door leading into the garage, and called 911 again. Ewing continuously banged on the door while Peterson was on the phone.

[5] Indianapolis Metropolitan Police Department Officers Matthew Pankonie, Roberto Sanchez, and Nicholas Wrobleski arrived at the scene. Officer Sanchez stayed with Ewing while Officer Pankonie searched for Peterson. Officer Sanchez noticed that Ewing was constantly staggering, smelled strongly of alcohol, and slurred his speech. Officer Pankonie knocked on the garage door to notify Peterson that police had arrived. Peterson let the police inside and frantically spoke with them about the incident. Officer Pankonie noticed that Peterson had bruises and scratches on her forearm and that she appeared disheveled and very upset by what happened. *Id*. at 73-74. She also consented to a search of her home wherein the police located Ewing's gun with the help of a trained K-9 unit.

[6] On August 11, 2017, the State charged Ewing with Level 5 felony intimidation, Level 5 felony pointing a firearm, Level 6 felony criminal recklessness, Level 6 felony strangulation, Level 6 felony domestic battery, and Class A misdemeanor unlawful possession of a firearm by a person previously convicted of domestic battery.

[7] At the jury trial on March 7, 2018, the defense moved for a mistrial, arguing that Peterson's testimony about how "Ewing had tried to jump on Dion's daughter," tr. vol. II p. 16, was not only hearsay but also unduly prejudicial to the defense's case. The trial court overruled the objection and denied the request for a mistrial. The jury found Ewing not guilty of the intimidation, pointing a firearm, criminal recklessness, and strangulation counts, but guilty of the domestic battery and unlawful possession of a firearm by a person previously convicted of domestic battery counts. On March 13, 2018, the trial court sentenced him to an aggregate two-year sentence in community corrections. Ewing now appeals.

# Discussion and Decision

[8] Ewing's argument on appeal is that Peterson's testimony that "Ewing had tried to jump on Dion's daughter," *id.*, is inadmissible hearsay. He also argues that the statement had a prejudicial effect that caused the jury (1) to assume that Ewing had a propensity to commit battery, and consequently, (2) to wrongfully convict him. Ewing claims he is entitled to a new trial because of this alleged error.

[9] We will overrule a trial court's ruling on admission of evidence only when the ruling is clearly against the logic and effect of the facts and circumstances before us. *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015).

[10] With this standard in mind, we hold that Peterson's testimony was not hearsay or unduly prejudicial, and the trial court did not err by permitting it. We question whether Ewing's counsel's contemporaneous objection to the testimony sufficed to preserve the issue on appeal, but giving Ewing the benefit of the doubt, we will address it.

[11] Ewing argues that the admission of this testimony was erroneous because it was inadmissible hearsay. It is true that Peterson repeated a statement originally spoken by Ewing's sister. But Indiana Rule of Evidence 801(c)(2) establishes that a statement is hearsay only if it is "offered . . . to prove the truth of the matter asserted." Here, the State offered this testimony only to show why Peterson got up to lock the door to her house rather than to show that Ewing had, in fact, "jump[ed] on Dion's daughter." Tr. Vol. II p. 16. In other words, it is apparent that the statement was not offered to prove the truth of the matter asserted. Therefore, the statement was not hearsay.

[12] Ewing also argues that the prejudicial effect of Peterson's testimony outweighs its probative value because the statement affected the jury's reasoning for the remainder of trial. *See* Ind. Evid. Rule 403. We find this argument unavailing. Peterson uttered this phrase only once at the very beginning of her lengthy testimony. It would be illogical to assume that a lone statement would have

such an effect on the jury as to color its judgment throughout the rest of trial. Any potential prejudice that might have resulted from the trial court's admission of the statement could not have had so significant of an impact on the jury as to deprive Ewing of a fair trial. Because the statement itself was not dispositive in the overall scheme of Peterson's testimony, its prejudicial effect did not outweigh its probative value, and its admission was not erroneous.

[13] Finally, we note that even if the admission of the statement was erroneous, the error was harmless. An error is harmless if the probable impact of the error, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties. *Black v. State*, 794 N.E.2d 561, 565 (Ind. Ct. App. 2003).

[14] We cannot say Peterson's lone statement unfairly prejudiced Ewing when evaluated in light of all the other compelling evidence supporting Ewing's conviction. The State presented Peterson's uncontroverted testimony about the ordeal, which was corroborated by the officers and the surrounding circumstances. Peterson's injuries—namely, the scratches and bruising on her forearm—as well as the ripped blinds and disheveled kitchen indicated that a harmful altercation took place in the home. The officers found a gun in Peterson's home that was determined to be Ewing's. Even without testimony about what Ewing had done before arriving at Peterson's home, the jury had more than enough evidence with which to convict Ewing of domestic battery and unlawful possession of a firearm by a person previously convicted of domestic battery. Therefore, even if this brief testimony was admitted in error,

the error was harmless in light of the wealth of other evidence in the record supporting Ewing's convictions.

[15]     The judgement of the trial court is affirmed.


May, J., and Robb, J., concur.