## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 21 2019, 10:17 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert W. Glenn,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 21, 2019

Court of Appeals Case No.
19A-CR-727

Appeal from the Tippecanoe
Circuit Court

The Honorable Sean M. Persin,
Judge

Trial Court Cause No.
79C01-1810-F5-188

**Crone, Judge.**

## Case Summary

Robert W. Glenn was convicted of level 6 felony domestic battery. He now appeals, challenging the trial court's admission of a portion of a recorded 911 call. Finding no abuse of discretion, we affirm.

## Facts and Procedural History

In October 2018, Glenn was engaged to J.M., and the two were living with a roommate in a ground-floor apartment inside a house. At that time, Glenn was aware that J.M. was approximately eight months pregnant, and he had agreed to help her raise the child even though he knew it was not his. On October 18, 2018, J.M. and Glenn were alone in the living room. A verbal argument ensued concerning a piece of paper that J.M. was holding that Glenn believed to contain his credit card information. Glenn demanded that she give him the paper, and she refused. The argument escalated when Glenn pushed J.M. The two continued to push each other, and J.M. later recounted, Glenn "grabbed me and had choked me and I was telling him to let me go because I couldn't breathe." Tr. Vol. 2 at 44. Glenn did not let go. *Id*. at 47. At some point during the incident, J.M. dropped the paper, and both of them fell to the floor. Glenn was on top of her momentarily, with his knee in her back and side, as they both struggled to retrieve the paper. J.M. believed that she was having an anxiety attack because she could not breathe, and she was worried "[t]hat there was something wrong with the baby." *Id*. at 40.

[3] Meanwhile, the upstairs neighbor ("Neighbor") heard screams and cries for help and called 911. Shortly thereafter, Lafayette Police Department Officer Alvin Cudworth came to the door. By that time, J.M.'s roommate had entered the room and opened the door for police. J.M. hurried outside to the porch and exclaimed that Glenn had grabbed her by the neck, that she could not breathe, and that she was anxious for the condition of her baby. Officer Cudworth observed red marks on J.M.'s neck and right arm. Emergency medical personnel arrived and took J.M. to a nearby hospital. While en route, Emergency Medical Technician ("EMT") Jim Merida observed red marks on the left side of J.M.'s neck, bruising on the left side of her lower abdomen, and an abrasion. J.M. reported to him and to the treating physician that she had been choked/strangled and kicked in her back and side. During treatment, J.M. complained of blurred vision and pain all over her body, and the baby was monitored for fetal heart tones.

[4] The State charged Glenn with level 5 felony criminal confinement, level 5 felony strangulation of a pregnant woman, level 5 felony domestic battery resulting in bodily injury to a pregnant woman, level 6 felony domestic battery, and a habitual offender count. A jury convicted Glenn of class A misdemeanor domestic battery, and Glenn admitted to having a prior domestic battery conviction, thus enhancing his conviction to level 6 felony domestic battery. The jury acquitted Glenn on the remaining charges. The trial court sentenced him to two and a half years, with two years executed in community corrections

and six months on supervised probation. Glenn now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

Glenn challenges the trial court's admission of a particular statement included in the audio recording of Neighbor's 911 call. We review evidentiary rulings for an abuse of discretion resulting in prejudicial error. *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015). An abuse of discretion occurs when the trial court's ruling is either clearly against the logic and effect of the facts and circumstances before it or the court misinterprets the law. *Id.* In determining whether improperly admitted evidence has prejudiced the defendant, we assess the probable impact of that evidence on the jury in light of all the other properly admitted evidence. *Id.* If independent, properly admitted evidence of guilt supports the conviction, the error is harmless. *Id.*

At trial, Glenn objected to the 911 tape on grounds of unfair prejudice and/or jury confusion under Indiana Evidence Rule 403.[1] Evidence Rule 403 states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." The trial court has wide latitude in weighing the probative value of the evidence against possible unfair prejudice resulting from

---

[1] Glenn also objected on hearsay grounds below but does not raise hearsay on appeal.

its admission. *Luke v. State*, 51 N.E.3d 401, 416 (Ind. Ct. App. 2016), *trans. denied*. "[A]ll evidence is 'inherently prejudicial' and, therefore, the Rule 403 analysis 'boils down to a balance of the probative value of the proffered evidence against the likely unfair prejudicial impact of that evidence.'" *Rasnick v. State*, 2 N.E.3d 17, 810 (Ind. Ct. App. 2013) (quoting *Duvall v. State*, 978 N.E.2d 417, 428 (Ind. Ct. App. 2012), *trans. denied* (2013)), *trans. denied* (2014). "Unfair prejudice ... looks to the capacity of the evidence to persuade by illegitimate means, or the tendency of the evidence to suggest decision on an improper basis." *Camm v. State*, 908 N.E.2d 215, 224 (Ind. 2009) (quoting *Ingram v. State*, 715 N.E.2d 405, 407 (Ind. 1999)).

[7] Here, Glenn objected to only one statement in Neighbor's 911 call: "It *sounds like* he's really attacking her." State's Ex. 2R (emphasis added). He asserts that the probative value of the statement was substantially outweighed by the danger of unfair prejudice and juror confusion, namely, that the jury might believe Neighbor to be an eyewitness and give her statement undue credence. We do not believe that the challenged statement supports an inference that Neighbor was an eyewitness. At trial, J.M. testified that she had been screaming very loudly and that she believed a next-door neighbor had called the police. Tr. Vol. 2 at 51-52. She also confirmed that the neighbor was not present in the apartment during the altercation. *Id.* at 52. We believe that the challenged statement supports a common sense, reasonable inference that Neighbor, who lived immediately above J.M. and Glenn, relayed to the dispatcher that she heard what she perceived to be an attack occurring in the apartment below.

The challenged statement is highly probative evidence in a domestic battery case and clearly indicates that Neighbor relied on her sense of hearing before and during her conversation with the dispatcher.

[8] Moreover, Glenn does not challenge any other statements made by Neighbor during her 911 call. The unchallenged statements include: (1) "a woman is screaming for her life"; (2) "she's saying, 'please get off me'"; and (3) "I heard her say, 'someone call the cops.'" State's Ex. 2R. Each of these unchallenged statements supports a common sense, reasonable inference that the caller was relying on her sense of hearing and was simply relaying her auditory observations to the dispatcher.

[9] The trial court admitted the 911 recording in full and, in the interest of avoiding juror confusion, directed the State to reinforce to the jury that Neighbor's perspective was limited to what she heard. The State did not directly do so during its principal closing argument. *See* Tr. Vol. 2 at 137 ("[Y]ou heard the 911 caller say somebody is screaming get off of me"). However, defense counsel clarified the matter during his closing argument, stating, "The 911 call you heard mentioned that yes there was screaming. There is an individual yelling get off of me. We're not debating that happened.… there was yelling, there was this commotion. The caller wasn't in the room okay.… we have two people in [the] room." *Id*. at 145. During rebuttal, the State addressed the issue as follows:

> [J.M.] was screaming so loud that the upstairs neighbors called police. And you heard the 911 call. (911 call played during

closing). The 911 call a woman screaming for her life saying
please get off of me, heard someone say call the cops, why do
you need police involved if there is not a physical altercation
going on? Why do you need police involvement to get away
from if he is not touching you? And most importantly sounds
like he is really attacking her. *That is what she is hearing.* She is
relating to the police, to the dispatcher, what is ongoing ….
There was something going on in that house, something so bad
that the neighbor had to call police.

*Id.* at 149-50 (emphasis added). We find these statements sufficient to clarify
the limited perspective of the caller, so as to cure any potential juror confusion.

[10] We categorically reject Glenn's assertion that the challenged portion of the 911
recording is unfairly prejudicial because it is the only evidence, other than
J.M.'s testimony, that supports J.M.'s version of the incident. In addition to
the unchallenged statements on the 911 recording, which are also probative of
whether J.M. was screaming for help and asking a person to get off her, the
photographic exhibits and trial testimony of Officer Cudworth and EMT
Merida support J.M.'s battery claims. Officer Cudworth testified that J.M. ran
out of the residence toward him, saying that she could not breathe and that she
had been choked. He also recounted that "[s]he was crying, her eyes were full
of tears, and I could see that her neck was read [sic] and so was her right arm."
*Id.* at 59. Photographic exhibits confirmed the red marks. State's Exs. 3-6.
Officer Cudworth asked J.M. "specifically who had choked her and she pointed
in the house saying him [Glenn]." Tr. Vol. 2 at 60. EMT Merida testified that
J.M had reported to him that Glenn had grabbed her by the sweatshirt around
her neck and that she was struggling to breathe. He observed red marks on her

neck and abrasions on her lower left side and abdomen consistent with her report. Thus, independent, properly admitted evidence supports Glenn's conviction.[2]

In sum, the probative value of the challenged statement in Neighbor's 911 call is not substantially outweighed by the danger of unfair prejudice or jury confusion. The trial court therefore acted within its discretion in admitting the statement. Accordingly, we affirm.

Affirmed.

Baker, J., and Kirsch, J., concur.

---

[2] Glenn also asserts that because the State neither called Neighbor to testify at trial nor established her unavailability as a witness, he was denied his Sixth Amendment right to confront and cross-examine her concerning her statements on the 911 recording. However, he has waived review of this claim for failure to present a cogent argument with citations to authority as required by Indiana Appellate Rule 46(A)(8). *See Sheckles v. State*, 24 N.E.3d 978, 985 (Ind. Ct. App. 2015) (defendant waived confrontation claim for failure to develop argument on appeal), *trans. denied*.