# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision is not binding precedent for any court and may be cited only for persuasive value or to establish res judicata, collateral estoppel, or law of the case.

 

IN THE

# Court of Appeals of Indiana

Steven D. Shepard,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

January 28, 2025

Court of Appeals Case No.
24A-CR-567

Appeal from the Shelby Superior Court

The Honorable R. Kent Apsley, Judge

Trial Court Cause No.
73D01-2301-F1-1

---

**Memorandum Decision by Judge Foley**
Judges Bailey and Bradford concur.

**Foley, Judge.**

[1] Following a jury trial, Steven D. Shepard ("Shepard") was convicted of Level 1 felony child molesting.[1]  Shepard appeals, raising the following restated issues:

> I.   Whether fundamental error occurred due to alleged improper opinion testimony from an investigating officer;
>
> II.  Whether the trial court abused its discretion in striking certain opinion testimony from Shepard's son; and
>
> III. Whether sufficient evidence supported the conviction.

[2] We affirm.

## Facts and Procedural History

[3] On January 27, 2023, the State charged Shepard with Level 1 felony child molesting for performing oral sex on his step-granddaughter, J.A., between January 1, 2020, and December 31, 2021.  J.A., born in March 2012, was eight or nine years old at the time of the molestation.  The criminal case progressed to a jury trial, which was held in January 2024.

[4] At trial, the State presented evidence that Shepard lived in Shelbyville with his wife, their son, and their son's wife.  During the pertinent timeframe, J.A. regularly visited Shepard's home on the weekends.  Around that time, J.A.

---

[1] Ind. Code § 35-42-4-3(a) .

referred to Shepard as "Papaw Steve." Tr. Vol. 2 p. 45. J.A. sometimes stayed overnight at Shepard's home, where she would sleep on a couch in the living room. J.A. testified about one such overnight in 2020 or 2021, when J.A. was eight or nine years old. It was nighttime and J.A. was lying on the couch under a blanket, watching YouTube on Shepard's iPad. Meanwhile, Shepard was sitting at a nearby desk. J.A. recounted that Shepard periodically pulled back her blanket, "checking over and over to see if [J.A.] was asleep[.]" Tr. Vol. 1 p. 186. J.A. "wonder[ed] why" he did so. *Id.* Eventually, J.A. "acted like [she] was asleep," thinking Shepard would stop checking on her. *Id.* While J.A. was pretending to be asleep, Shepard pulled off her blanket. He then repositioned J.A., so she was sitting up with her legs out. At that point, J.A. was "frozen in shock" and "didn't really know what to say or do about it." *Id.* at 191. J.A. still pretended to be asleep, recounting: "I was afraid that he would hurt me if I tried to move or if he knew that I was awake." *Id.* Shepard then pulled down J.A.'s pants, kneeled on the floor, and licked J.A's vagina. J.A. said that, at that point, "[a]ll [she] felt was cold." *Id.* at 193. J.A. heard a noise across the house, at which point Shepard "quickly looked over and then stopped." *Id.* J.A. recounted: "I thought I was in a dream, and then . . . whenever [Shepard] went into his room[,] I pinched myself. I realized that I wasn't in a dream, and I started crying, but then I tried to go back to bed." *Id.* at 194. J.A. sent her mother a text message, asking her to pick up J.A. "early in the morning[.]" *Id.*

[5] J.A. did not immediately report the sexual abuse. In September 2022, by which point J.A. was ten years old, J.A. disclosed the abuse to her school counselor,

Christina Reed ("Reed"). Reed testified at trial, explaining that J.A. submitted an appointment request online, indicating that the appointment would be to discuss that J.A.'s parents were going through a divorce. At the appointment, J.A. disclosed that "something sexual . . . had happened to her[.]" *Id.* at 244. Reed contacted J.A.'s mother, who picked up J.A. early from school. When J.A.'s mother "asked who did that," J.A. wrote a note identifying Shepard. *Id.* at 237. J.A. added to the note: "P.S. I'm terrified." *Id.*; Ex. Vol. 1 p. 22. Reed reported J.A.'s disclosure, which led to an investigation by law enforcement. The investigation was led by Chief Bill Dwenger ("Chief Dwenger") of the Shelbyville Police Department, who at the time had the rank of Detective.

[6] Chief Dwenger testified about his investigation, which involved separate interviews with J.A. and Shepard. Chief Dwenger explained that he had received training in how to forensically interview a child and that he chose to interview J.A. rather than refer J.A. to a Child Advocacy Center ("CAC"). As to his decision to personally interview J.A., Chief Dwenger said: "I've lost two jury trials where a [CAC] was used. They just interview differently than law enforcement. So if I'm involved in a case, I interview myself." Tr. Vol. 2 p. 57. Turning to the interview with J.A., Chief Dwenger said that J.A. volunteered information in the interview that "startled" him because "how would she know this if something didn't happen." *Id.* at 60–61. As to the interview with Shepard, Chief Dwenger said that Shepard denied the allegations, but the denials seemed "almost apologetic." *Id.* at 89. A recording of Chief Dwenger's interview with Shepard was admitted into evidence and played for the jury.

Shepard did not object to the admission of the recorded interview, nor did Shepard object to Chief Dwenger's testimony about his interview methods and his impressions about J.A.'s statements and Shepard's denials of wrongdoing.

[7] After the State rested, Shepard called his son as a witness. When asked whether the allegations against Shepard came "as a shock," Shepard's son said: "Completely a shock because my dad would never do anything like this." *Id.* at 201. The State objected. The trial court sustained the objection, struck the challenged testimony, and admonished the jury to "disregard the last portion of the witness's statement that was unresponsive to any question asked." *Id.*

[8] The jury ultimately found Shepard guilty. On February 21, 2024, the trial court conducted a sentencing hearing and imposed a thirty-year sentence with twenty years executed and ten years suspended to probation. Shepard now appeals.

## Discussion and Decision

### I. Fundamental Error

[9] Shepard alleges the trial court erred in admitting Chief Dwenger's testimony about his decision to personally interview J.A. and testimony about aspects of his interviews with J.A. and Shepard. Because Shepard did not object to the testimony at trial, our review is limited to whether fundamental error occurred. *See* Ind. Evidence Rule 103; *Sampson v. State*, 38 N.E.3d 985, 992 (Ind. 2015).

[10] "Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue." *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006).

To establish fundamental error, it is not sufficient to merely prove the evidence was inadmissible under the Indiana Rules of Evidence. *Cf. Kelly v. State*, 122 N.E.3d 803, 805–06 (Ind. 2019) (noting that even evidentiary error offending a constitutional right "does not, in and of itself, render it fundamental error"). Rather, the defendant must identify error "so prejudicial" to the defendant's rights as to "make a fair trial impossible." *Cooper*, 854 N.E.2d at 841. Indeed, the defendant must identify "clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009); *Kelly*, 122 N.E.3d at 805 (noting that the error must be "so blatant" that the trial court "should have acted independently to correct the situation"). Applying this standard in *Hoglund v. State*—which involved a conviction for child molesting—the Indiana Supreme Court determined that an expert witness impermissibly vouched for the credibility of the child victim, but that reversal was not warranted because the evidentiary error was not fundamental. 962 N.E.2d 1230, 1238 (Ind. 2012).

[11] Shepard directs us to Indiana Evidence Rule 704(b), which provides as follows: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Shepard argues that Chief Dwenger's testimony violated Rule 704(b) in several respects. First, Shepard focuses on Chief Dwenger's statement that, because he "lost two jury trials where a [CAC] was used," Chief Dwenger chose to personally interview J.A. Tr. Vol. 2 p. 57. Shepard claims this testimony "effectively told the jury" that Chief Dwenger

believed Shepard was guilty and that "acquittal was not an acceptable result." Appellant's Br. p. 28. Next, Shepard focuses on Chief Dwenger's testimony that J.A. volunteered information that "startled" him because "how would she know this if something didn't happen." Tr. Vol. 2 pp. 60–61. Shepard argues that this testimony amounted to improper vouching. Finally, Shepard directs us to Chief Dwenger's statement that Shepard's denials seemed "apologetic," arguing that Chief Dwenger improperly opined on his guilt. *Id.* at *89*. Shepard suggests that fundamental error occurred, not just because of each challenged statement, but because of the cumulative effect of the statements. Shepard claims that fundamental error occurred because "the evidence against [him] was not overwhelming" and Chief Dwenger's testimony could have easily influenced the jury, especially considering his rank. *See* Appellant's Br. p. 31.

[12] Even assuming Indiana Evidence Rule 704(b) prohibited the challenged testimony, Shepard has not demonstrated that the error was so blatant and prejudicial as to render a fair trial impossible under the circumstances. First, J.A. had already testified extensively before Chief Dwenger took the stand, giving the jury an independent basis to assess her credibility. Moreover, to the extent Shepard minimizes the impact of J.A.'s testimony—asserting that "[t]he State's case was based on the uncorroborated testimony of an eleven year old whose memory was not very reliable," *id.*—the record reflects that J.A.'s testimony about the abuse was detailed, consistent, and aligned with her written identification of Shepard as her abuser. Furthermore, to the extent Shepard argues that Chief Dwenger's testimony suggested he believed J.A. and

disbelieved Shepard, we agree with the State that for the general proposition that, irrespective of the challenged testimony, the jury could have inferred as much from the fact that the State brought charges after Chief Dwenger's investigation. Although Shepard emphasizes that opinion testimony is nevertheless impermissible, *see* Reply Br. pp. 9–10, Shepard failed to object, and any inadmissibility of evidence does not in itself establish fundamental error. Moreover, regardless of any improper opinion testimony, the jury had the opportunity to view a recording of Shepard's interview and independently assess his credibility, which mitigated against the prospect of fundamental error.

[13] Given the substantial evidence of Shepard's guilt through J.A.'s testimony, that there was independent evidence indicating she was consistent in her allegations, that the jury had the chance to independently assess Shepard's credibility by viewing his recorded interview with Chief Dwenger, and that Chief Dwenger's challenged testimony about the interviews constituted a relatively small portion of the evidence presented to the jury, we cannot say the challenged testimony was susceptible of so thoroughly tainting the proceedings as to render a fair trial impossible for Shepard. Thus, Shepard has not established fundamental error.

## II.  Exclusion of Character Evidence

[14] Shepard next argues that the trial court erroneously excluded testimony from his son that the allegations against Shepard were "[c]ompletely a shock because my dad would never do anything like this." Tr. Vol. 2 p. 201. When an evidentiary issue is preserved, we review the trial court's ruling for an abuse of discretion. *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015). An abuse of

discretion occurs when the evidentiary ruling is clearly against the logic and effect of the facts and circumstances, or the trial court misapplied the law. *Id.*

[15] Under our Evidence Rules, evidence of a person's character or character trait is generally "not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Evid. R. 404(a)(1). However, under Evidence Rule 404(a)(2), "a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it[.]" Evid. R. 404(a)(2)(A). Although this rule permits a criminal defendant to present certain character evidence, the rule does not override Evidence Rule 704(b), which prohibits any witness from testifying to "opinions concerning intent, guilt, or innocence in a criminal case[.]"

[16] Here, Shepard's son did not testify about any character trait. Rather, the testimony at issue distilled to an opinion that Shepard would not commit child molesting. Because the testimony went beyond describing a pertinent character trait and instead expressed an opinion about guilt or innocence, the trial court did not abuse its discretion in striking the testimony and admonishing the jury.

## III. Sufficiency of the Evidence

[17] Shepard challenges the sufficiency of the evidence supporting his conviction for Level 1 child molesting. When reviewing a sufficiency challenge, we consider only the probative evidence and reasonable inferences supporting the judgment, without reweighing the evidence or reassessing the credibility of the witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). If the record discloses

substantial evidence of probative value as to each element of the offense, such that a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt, we affirm. *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005).

[18] To convict Shepard of Level 1 felony child molesting, the State was obligated to prove that Shepard, being at least twenty-one years of age, knowingly performed sexual intercourse or "other sexual conduct" with J.A. when she was under fourteen years of age. *See* Ind. Code § 35-42-4-3(a)(1) (2015). The statutory definition of "other sexual conduct" includes an act involving a sex organ of one person and the mouth of another person. I.C. § 35-31.5-2-221.5.

[19] Shepard does not dispute that, under current Indiana law, the State presented sufficient evidence to support his conviction. *See* Appellant's Br. pp. 15–24; Reply Br. p. 5–6. Rather, Shepard asks us to reconsider Indiana precedent standing for the proposition that a conviction for child molesting may rest on the uncorroborated testimony of a child. Shepard asserts: "Under the current rule, a conviction based on the uncorroborated testimony of a child, no matter how implausible, will almost always survive appellate review." Appellant's Br. p. 23. Shepard directs us to a dissenting opinion in *Leyva v. State*, where Judge Baker called for "requir[ing] corroborating evidence when these types of offenses are supported only by the testimony of a single witness." 971 N.E.2d 699, 705 (Ind. Ct. App. 2012) (Baker, J., dissenting). He also advances policy arguments about the risks of relying on uncorroborated testimony in these types of cases.

The State claims Shepard's argument is misplaced in that J.A.'s testimony was not wholly uncorroborated. *See* Appellee's Br. p. 18 ("[T]he State presented sufficient evidence that went beyond the testimony of the child-victim."). In any case, we need not further address the call to revisit our Supreme Court's binding precedent because, as an intermediate appellate court, we are bound to apply it. *See, e.g.*, *Dragon v. State*, 774 N.E.2d 103, 107 (Ind. Ct. App. 2002), *trans. denied*. All in all, because Shepard does not challenge the sufficiency of the evidence under prevailing Indiana law, and we identify no evidentiary defect, we conclude that sufficient evidence supported Shepard's conviction.

## Conclusion

Shepard has not demonstrated that fundamental error occurred due to the admission of Chief Dwenger's testimony. Moreover, the trial court properly excluded testimony from Shepard's son, and the evidence presented was sufficient to support Shepard's child molesting conviction. We therefore affirm.

Affirmed.

Bailey, J. and Bradford, J., concur.

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana